## The Mutual Union Telegraph Company

*v.*

## Adolph Katkamp.

*Filed at Mt. Vernon June 21, 1882.*

EMINENT DOMAIN—*of the damages for right of way for a telegraph line.* A telegraph company sought to condemn a strip of land eighteen inches wide and three feet deep every one hundred and fifty feet from the point of beginning, etc., of sufficient width to erect telegraph poles and fixtures thereon, the poles to be set along the line of the right of way of a railroad which was fenced, and the proof showed there would be eleven poles on defendant's land, which was worth $60 per acre. Three witnesses for the defendant testified that the damages would be $10 a pole, arising from their interfering with the use of farming implements, while three witnesses for the petitioner testified, one that fifty cents, and the other two that one dollar a pole, would be full compensation, and that when the poles pursued the line of the right of way of a railroad company, as in this case, in their judgment there could be no other damage than the value of the land taken. It also appeared that a strip of land six feet wide across the whole tract would be two-tenths of an acre, of the value of $12, at $60 an acre, and such a strip eighteen feet wide would be but six-tenths of an acre, and worth but $36. The jury, by their verdict, gave the defendant $38.50: *Held,* that the verdict was manifestly too high, and for this error the judgment was reversed.

APPEAL from the County Court of Madison county; the Hon. M. J. DALE, Judge, presiding.

Mr. A. W. HOPE, for the appellant.

Mr. Justice Sheldon delivered the opinion of the Court:

This was a proceeding on the part of the Mutual Union Telegraph Company, under the Eminent Domain act of this State, to condemn a right of way for telegraph poles across the land of Adolph Katkamp, being described in the petition as a strip of land eighteen inches wide and three feet deep every one hundred and fifty feet from the point of beginning, etc., of sufficient width to erect telegraph poles and fixtures thereon. The damages were assessed at $38.50, and the company appealed to this court.

It appeared that the telegraph poles were to be set along the line of the right of way of the St. Louis, Jacksonville and Chicago railroad, one foot from such right of way line, that there would be eleven poles on defendant's land, and that his land was worth $60 per acre. The defendant himself testified that the land was worth $60 an acre; that the damage to him would be $10 a pole; that the land actually taken would not be worth much; that he thought the poles being upon the land would injure its sale, and interfere with the cultivation of the land by being in the way of the plows and machinery, and for farming purposes. Another witness testified that in his opinion defendant's damages would be $10 a pole; that he estimated the damage could arise from the poles interfering with the use of farming implements in cultivating the farm, and would prevent plowing as close to the railroad as if the poles were not there. A third witness testified to the damages being $10 a pole; that the poles would interfere with the cultivation of the land, and might break the plows and machinery used to cultivate the farm. This was all the testimony on the part of the defendant as to the value of the land, or as to damages. Three witnesses gave testimony on the part of the petitioner, one that fifty cents, the other two that one dollar a pole, would be full compensation to the land owner for putting up the poles on his land;

that when the poles pursue the line of the right of way of a railroad company, as in this case, in their judgment there could be no other damage than the value of the land taken.

It appears that a strip of land six feet wide, extending continuously across the whole tract of defendant's land, a quarter section, would be two-tenths of an acre of land, and of the value of $12, at $60 an acre; and such a strip, even eighteen feet wide, across the whole tract, would be but six-tenths of an acre of land, and worth but $36. This shows that the verdict of $38.50 is manifestly against the evidence. Had either one of such strips of land been taken absolutely, it is not perceived, from the evidence, what other damage would have been sustained. There is no pretence of any damage in addition to the land taken, other than interference with the cultivation of the remainder of the land. But, as it appears to us, there was the same interference in that respect from the line of fence of the railroad right of way, as there would be from the line of telegraph poles; that there would be no more difficulty in cultivating up to the telegraph poles than there was before in cultivating up to the fence, so that there would be no enhancement of damage in this respect from the erection of telegraph poles, if allowance of compensation were made for the land taken and used by the company. Testifying to amounts of damage, where there is no basis of damage, is of no value as evidence.

Regarding the verdict as clearly against the evidence, the judgment is reversed, and the cause remanded.

*Judgment reversed.*