THE ST. LOUIS AND CAIRO RAILROAD COMPANY *et al.*

*v.*

THE POSTAL TELEGRAPH COMPANY.

*Opinion filed June 18, 1898.*

1. PROCESS—*summons in eminent domain is properly returnable to court.* A summons in eminent domain, though issued in vacation, is properly made returnable to the court, and not to the judge who is to hear the cause.

2. PARTIES—*effect of failure to make mortgagees parties to eminent domain.* Failure of a petitioner to make mortgagees of property parties to the proceeding to condemn does not invalidate the proceeding as to the mortgagor and his lessee, who are made parties, nor can the latter take advantage of the omission on appeal.

3. EMINENT DOMAIN—*condemnation of railroad right of way for telegraph line—sufficiency of petition.* A petition to condemn a right of way for a telegraph line along and upon a railroad right of way, which describes the railroad right of way as extending from a certain city to another, gives its width, location of tracks, etc., and which describes the proposed improvement by giving the hight and dimensions of the poles, distance of poles from track and from each other, length of cross-arms, etc., is sufficiently specific.

4. SAME—*sufficiency of averment as to failure to agree on compensation.* An averment in a condemnation petition that the petitioner has applied to the defendants for the privilege and right of way to construct the proposed improvement, and has endeavored to come to an agreement upon the damages to be paid the defendants but has wholly failed to reach an amicable agreement, is sufficient.

5. SAME—*telegraph company may erect line along railroad right of way.* Section 2 of the act on telegraph companies, (Rev. Stat. 1874, p. 1052,) providing that a telegraph company may construct its line "along and upon any railroad," etc., authorizes the condemnation of a right of way for a telegraph line lengthwise along and upon the railroad right of way, and is not limited to the crossing thereof.

6. SAME—*telegraph company need not file plat of proposed improvement.* A telegraph company petitioning to condemn a railroad right of way for the construction of its telegraph line is not required to file a plat of the proposed improvement, where such filing would not give a more intelligible description of the manner in which the improvement is to be made than is contained in the petition.

7. SAME—*what sufficient proof of failure to agree on compensation.* An averment in a condemnation petition of inability to reach an amicable settlement as to right of way and compensation, is supported by proof that the lessee of the property, whose term did not expire

for over thirty years, refused to accede to any terms or consent to the construction of the proposed improvement, (a telegraph line,) basing its refusal on the existence of a contract giving the exclusive use of the property to another telegraph company.

8. Same—*when a cross-petition is not necessary.* Where property claimed by defendants to be damaged is described in the petition, as well as the property which is to be actually taken, no crosspetition is necessary.

9. Same—*jurisdiction of court to condemn railroad right of way outside of county.* Under section 3 of the Telegraph Companies' act, authorizing condemnation, section 2 of the Eminent Domain act, authorizing suit in the county where the property, "or any part thereof," is situated, and section 2 of the Practic act, providing that actions against a railroad company may be brought in any county into or through which its road runs, the proper court, or judge thereof in vacation, in any county in which part of a railroad right of way is located has jurisdiction to condemn the same along its entire length within the State, for the right of way of a telegraph line.

10. Same—*effect of absence of statutory provision for recording judgment in other counties.* The fact that there is no express provision in the statute for recording a condemnation judgment in any other county than where rendered is of no significance, as the recorder's office in each county is open for the record of a copy of the judgment rendered in another county; and petitioner's possession of property in other counties would be, of itself, notice of rights therein.

11. Same—*view of right of way by jury need not extend its whole length.* Upon petition by a telegraph company to condemn a right of way for its telegraph line along and upon a railroad right of way, the jury may return a verdict based on the evidence and a view of part of the right of way to be taken; and the court may refuse to permit the jury to view such right of way its entire length, where it does not appear the improvements thereon differ materially from those on the part viewed.

12. Same—*telegraph company takes only an easement on condemning railroad right of way.* Where a telegraph company condemns a right of way for its telegraph line along and upon a railroad right of way, the telegraph company acquires no fee in any portion of the right of way, but merely an easement in what it condemns, the ownership of the railroad remaining as before condemnation.

13. Same—*measure of damages where a telegraph company condemns railroad right of way.* The measure of damages where a telegraph company condemns a right of way for its line along and upon a railroad right of way is the value of the land actually taken for placing the poles, and the extent to which the value of the use of the portions between poles and under the wires, for railroad purposes, is diminished by their use by the telegraph company.

14. Same—*what damages too remote for consideration.* The facts that the railroad company might at some future time lay another track which the telegraph poles will obstruct, or may erect structures which will be interfered with by the wires, are matters too remote for consideration as elements of damage on condemning the right of way for a telegraph line, where the evidence fails to show any immediate demand for or intention to perform such acts, and particularly where the petition avers that in such contingencies the petitioner will remove the poles to other points, or erect poles high enough to carry the wires over structures, at its own expense.

15. Same—*expense of putting right of way in condition as element of damage.* A telegraph company, upon condemning a right of way for its line along and upon a railroad right of way, need not make compensation to the railroad company proportionate to the latter's expense in preparing the right of way for a railroad bed, where the petition avers that if any change in the earth's surface along the right of way has been made the petitioner will not set its poles where such changes have been made, and there is no evidence that the railroad company has been to any expense in preparing the right of way where the telegraph line is to be constructed.

16. Same—*effect where right of way is leased to other telegraph company.* Upon condemnation of a right of way for a telegraph line along a railroad right of way, the court may refuse to allow the defendant to prove that it had leased its right of way to another telegraph company at a certain amount per year, in order that such rental might be considered in estimating damages, where the lease is void, as against public policy, in granting the exclusive use of the right of way to such company.

17. Same—*when condemnation judgment is not void for uncertainty.* A condemnation judgment for a right of way for a telegraph line along and upon a railroad right of way, which locates the line "at a distance of not less than twenty-five feet from the outer edge of said railroad track, upon the east side of said track, or at such points as may be agreed upon by said telegraph company and the railroad company operating the road," is not void for uncertainty, as being in the alternative.

Carter, C.J., and Cartwright, J., dissenting.

Appeal from the County Court of Jackson county; the Hon. R. J. McElvain, Judge, presiding.

This is a petition, filed on June 4, 1897, in the county court of Jackson county by the appellee, a telegraph company, organized under the laws of Illinois on April 20, 1887, for the purpose of condemning a right of way

for its telegraph line upon and along the right of way of the St. Louis and Cairo Railroad Company from Cairo in Alexander county to East St. Louis in St. Clair county, a distance of about 152 miles.

The petition alleges, that the St. Louis and Cairo Railroad Company was a corporation under the laws of Illinois and owned all the right of way of the railroad extending from East St. Louis to Cairo; that on February 1, 1886, said railroad company leased to the Mobile and Ohio Railroad Company said right of way for a term of forty-five years; that said Mobile and Ohio Railroad Company was in possession and control of said right of way and railroad; that said right of way is one hundred feet wide, and extends the entire length of said railroad from East St. Louis to its terminal in Cairo; that said railway from East St. Louis to Cairo is a single line, constructed at the center of the right of way; that the track is about four feet and eight and one-half inches gauge, with switches, turn-outs, etc., such as are necessary to operate a single track railway; that the right of way extends about fifty feet wide from a line along the center between the rails of the main track. The other allegations of the petition, so far as it is necessary to refer to them, are set forth in the opinion.

The defendants entered a special appearance, and, on the day set for the trial, moved to quash the summons, and also made a number of motions to dismiss the petition upon several grounds, which are referred to in the opinion. The appellant, the St. Louis and Cairo Railroad Company, also filed a demurrer, specifying various causes of demurrer, most of which were the same in substance as the grounds alleged in support of the motions to dismiss the petition. The motion to require the petitioner to furnish a more particular description of the proposed location of the line of telegraph over the right of way of the defendants was sustained. The demurrer was also sustained, so far as it alleged that the petition

did not contain a sufficient description of the property sought to be condemned, or of the proposed telegraph line to be erected. All the other motions to dismiss were overruled, and the demurrer to the petition was also overruled, except as to the ground of demurrer already stated. The petitioner then amended its petition, so as to describe more particularly the property sought to be condemned, and the proposed location of the telegraph line to be built. The defendants then traversed each and every of the allegations of the petition, as amended, and called for proofs. The petitioner then introduced its certificate of incorporation, and certain testimony to show that it could not agree with the appellants as to the compensation to be paid. It also offered a copy of the resolution of its board of directors, authorizing the location and construction of the telegraph line upon said right of way. The court found the issues for the petitioner, and adjudged that it was entitled to maintain the proceeding, and ordered the cause to proceed to trial before a jury upon the issue of compensation and damages. A trial was had, and an award was found by the jury, but, both petitioner and defendants having moved for new trial, the same was granted.

On July 6, the defendants again appeared, and made motions to quash the summons, and dismiss the amended petition, which motions were overruled. Defendants then re-filed their original demurrer upon the same grounds as those already stated, which was also overruled. Defendants then traversed all the allegations of the amended petition, but the court ruled that its finding at the former trial upon said issues, which was in favor of the petitioner, should still stand as the judgment of the court. Defendants then moved for leave to file a cross-petition, which was denied. The jury was called, and evidence was submitted upon the question of compensation and damages. At the close of the evidence defendants moved the court to direct the jury to go upon the land

sought to be condemned in the counties of St. Clair, Monroe, Randolph, Perry, Jackson, Union and Alexander, to view the premises.    This motion was overruled.

The jury returned a verdict as follows:    "We, the undersigned jurors, beg to report, that, after hearing the evidence in the above styled cause, and having gone upon the lands and right of way sought to be taken and damaged and determined upon the compensation and damages that it would be just for the petitioner to pay the defendants, we find and have ascertained that the just compensation to be made to the St. Louis and Cairo Railroad Company for taking and damaging their lands and right of way described in the petition for a right of way to construct and maintain a telegraph line and erect telegraph poles at a distance of about one hundred and seventy-five feet from each other, over the right of way of defendant, the St. Louis and Cairo Railroad Company, at a distance of not less than twenty-five feet from the outer edge of the said railroad track, upon the east side thereof, or at such point as may be agreed upon by the petitioner and the railroad company operating said road, beginning at the corporation line of said railroad of the city of East St. Louis, Illinois, and extending southerly through the counties of St. Clair, Monroe, Randolph, Perry, Jackson, Union and Alexander, to the corporation line of the city of Cairo in the State of Illinois, to be the sum of $99.    And we find the just compensation and damages to be paid to the Mobile and Ohio Railroad Company for such taking of said premises to be the sum of one dollar."

After the verdict, and before the jury was discharged, the defendants moved the court to go upon all the lands described in the petition in the said several counties and view the same, and in support of said motion submitted an affidavit of the sheriff, showing that the jury had gone to view the land in question upon the said right of way within the limits of the city of Murphysboro, and for a

distance of two miles south thereof and one mile north thereof, making a total distance of about three miles. This motion was overruled and judgment was entered on the verdict.

The present appeal is prosecuted from the judgment so entered by the county court.

Ritchie, Esher & Woolley, John M. Herbert, and Lansden & Leek, for appellants.

J. R. McIntosh, Loesch Bros. & Howell, and Frank J. Loesch, for appellee.

Mr. Justice Magruder delivered the opinion of the court:

*First*—The defendants, limiting their appearance for the purpose, moved to quash the summons, upon the ground that this proceeding was begun in vacation and summons was returnable to the court, and not to the judge. This motion was properly overruled. The contention of the appellants is, that the county court obtained no jurisdiction of them by the service of summons, because the summons was returnable to the court, instead of being returnable to the judge of the court. Section 3 of the Eminent Domain act provides, that, if the petition is presented to a judge in vacation, the judge shall note thereon the day of presentation, and shall also note thereon the day when he will hear the same, and shall order the issue of summons, etc. This cause was set to be heard on June 23, 1897, which was in vacation. Section 2 of the Eminent Domain act also provides, that the party, seeking condemnation, shall apply to the judge of the circuit or county court, either in vacation or term time. While it is true that the act makes use in several of its sections of the expression "judge or court," yet it was not the intention of the act to provide two tribunals for the hearing of condemnation cases, one, the judge,

as an individual, and the other, the court, as a judicial tribunal.   The judge cannot exercise judicial power, except when sitting as a court and not as an individual. Whether the proceeding be in vacation or term time, it is a proceeding in court.   Therefore, the summons was properly made returnable to the county court, instead of the judge.   Such was the view of this court in reference to the contention here made upon this point, when it was urged in *Bowman* v. *Venice and Carondelet Railway Co.* 102 Ill. 459.

*Second*—It is claimed that the petition should have been dismissed, upon a motion made for that purpose, for want of necessary parties thereto.   In support of this motion the appellants submitted an affidavit, showing that the railroad right of way was subject to a mortgage or deed of trust, executed by the St. Louis and Cairo Railroad Company to certain trustees to secure a certain amount of indebtedness; and also showing, that said trustees were dead, and that certain successors in trust had been appointed in their places.   The motion to dismiss was based upon the fact, that these mortgagees or trustees were not made parties defendant to the petition to condemn.   As the mortgagees were interested parties, they should have been made defendants.   But the failure to make them defendants cannot be taken advantage of by the appellants, one of whom is the mortgagor and the other the lessee of the mortgagor.   "An omission of any proper party will not invalidate the proceeding as against such persons as are made parties.   The only consequence is, that, as against the omitted party, the condemnation is nugatory." (7 Ency. of Pl. & Pr. p. 504).   The mortgagees, not being made parties, would be left unaffected as to their interests by the judgment of condemnation.   The condemnation is nugatory as to them, but not invalid as to the appellants.   A party will not be permitted in a court of review to take advantage of an error that does not injuriously affect himself, or his interests.   (*Bowman*

v. *Venice and Carondelet Railway Co. supra; Brown* v. *Miner*, 128 Ill. 148; *Tyler* v. *Tyler*, 126 id. 525; *Gage* v. *DuPuy*, 134 id. 132). There was no error, therefore, in overruling the motion to dismiss for want of parties.

*Third*—Motion was made to dismiss the petition,and the point was raised in the traverse of appellee's amended petition, that the amended petition does not contain a sufficient description of the property sought to be appropriated, nor of the proposed line or route of telegraph. It is claimed by the appellants, that the petition does not set forth precisely what it demands, and just what portion of defendant's property it proposes to take or damage. The petition is not justly subject to the charge thus made against it. It is sufficient to describe the land condemned with reasonable certainty. *(Springfield and Illinois Southeastern Railway Co.* v. *Turner*, 68 Ill. 187; *Chicago and Alton Railroad Co.* v. *City of Pontiac*, 169 id. 155). An examination of the allegations of the petition will show, that the property sought to be condemned is described with reasonable certainty. Where a telegraph company seeks to condemn a part of the right of way of a railroad company, the position and size of the telegraph poles should be stated. *(Broome* v. *New York Tel. Co.* 49 N. J. L. 624). Data should be given, by which the location of the telegraph poles may be determined and the intended heights of the poles, as well as the number and size of the cross-arms they are to bear, should be indicated. *(New York and New Jersey Tel. Co.* v. *Broome*, 50 N. J. L. 432).

Here, the petition describes the right of way, upon which the petitioner seeks to locate its line, as the railway of the defendants running from East St. Louis to Cairo, in the manner set forth in the statement preceding this opinion. The petition then states, that the petitioner desires to construct a line of telegraph over and above said right of way for its entire length from its commencement in East St. Louis to its terminal in Cairo;

that a portion of said right of way lies in Jackson county; that the petitioner would locate a line of telegraph upon said right of way, and does not seek to acquire the fee to any lands, or the right to use the same for any purpose, but to locate a telegraph line thereon, and to repair and maintain the same, and use the same for telegraph purposes; that it desires only one line of poles; that it will be constructed of the best material and upon the most improved plan; that the poles will be not less than twenty-five feet long, and one foot in diameter at the base, and be set in the ground at a depth of not less than five feet; that upon the poles will be attached suitable arms, six feet in length, fastened near the top of the poles, and insulators, on which will be strung, at or near the upper end, wires of suitable material, and sufficient in number to enable the petitioner to promptly transmit telegraph messages; that the poles will be set about one hundred and seventy-five feet from each other, and will be erected upon the right of way at a distance of not less than twenty-five feet from the outer edge of the railroad track, and upon the east side of said track, or at such point as may be agreed upon by the telegraph company and the railroad company operating the same; that in places, where the line crosses the track, or where it is necessary to do so, to prevent interference with any work or use of said railroad, the poles will be so high above the ground as to permit the wires to be suspended so far above any structure of defendants, as to prevent any interference therewith; and that the said poles will be so erected on said telegraph line and so constructed and maintained, as not to obstruct or interfere with the business or use of said railroad, or hinder the usual travel and traffic thereon, or in any manner obstruct the use of, or come in contact with, any other line of telegraph upon said right of way; that there is no improvement or superstructure on said line, where it is necessary to construct and maintain said telegraph line, except the trestlework

and bridges, and except the filling and embankments; that such filling and embankments consist of a mere transformation of the earth into shape and condition to fit it into a railroad bed, but that the same is not at a point where petitioner intends to set poles and suspend wires.

The petition thus sets forth every detail necessary to identify and describe the location of the proposed telegraph line. It designates the railroad track as a fixed monument, and gives the height of the poles, the diameter of the poles, the distance of the poles from the track, the distance of the poles from each other, and the length of the cross-arms. This covers every reasonable intendment of the statute. It is true, that the petition does not state how many wires are to be placed upon the cross-arms, except that their number will be sufficient to enable the petitioner to promptly transmit telegraph messages. It is, however, no more required, that the petitioner should state the number of wires to be hung on the cross-pieces, than it is for a railroad company, in condemning land for a right of way, to designate how many railroad tracks it will put upon the strip one hundred feet wide, which it seeks to condemn for its railroad. It is assumed, that it will not put down any more tracks than the condition of its business will warrant. So, here, it may be assumed, that the telegraph company will not string any more wires than its business will demand. It seems to be conceded, that the construction of the petitioner's telegraph line will require the erection, through the whole line of the railroad right of way, of about 4500 telegraph poles. To locate each pole by an individual description, so as to designate by metes and bounds the exact spot of earth occupied by each, would require the insertion in the petition of 4500 separate descriptions. The very statement of such a proposition shows its unreasonableness.

*Fourth*—It is furthermore contended by the appellants that the petition does not show an endeavor, on the part

of the petitioner, to agree with defendants as to compensation and damages, and a failure to so agree.   This contention is without merit.   The Eminent Domain act requires the petitioner to show, that "the compensation to be paid for or in respect of the property, sought to be appropriated or damaged for the purposes above mentioned, cannot be agreed upon by the parties interested." The petition avers, that "the petitioner has applied to the defendants for the privilege and right of way to construct its telegraph line upon said right of way, and has endeavored to come to an agreement upon the damages to be paid to said company for said right of way aforesaid, but has wholly failed to reach an amicable agreement with either of said companies, by which said right of way could be secured or damages agreed upon; * * * and for such purposes compensation to be paid for and in respect of the property sought to be appropriated can not be agreed upon by said defendants and the petitioner." The averment of the petition is clearly sufficient.   "The averments in the petition to condemn land for a public use need not be in the language of the statute, but any allegations, showing affirmatively that the petitioner has been unable to agree with the owner in respect to the compensation to be paid, will suffice."   (*Reed* v. *Ohio and Mississippi Railway Co.* 126 Ill. 48).

*Fifth*—It is further urged, that the petition. fails to show, that the proposed telegraph line will not incommode the public use of the railroad.   The allegations of the petition, as already above referred to, show that this objection is not well taken.   Such allegations must be considered in connection with the description of the location of the telegraph line.   The location of the line, as indicated in the petition, shows that the public use of the railroad will not be seriously incommoded.

*Sixth*—The appellants further moved to dismiss the petition upon the alleged ground, that a telegraph company in Illinois cannot lawfully condemn a right of way

lengthwise upon the right of way of a railroad company. We are of the opinion, that the statute expressly authorizes such a condemnation. It may be conceded, as contended by counsel, that property already taken and dedicated to one public use cannot lawfully be taken for another public use inconsistent with the first, unless the legislature in express terms has so declared. (*Chicago and Alton Railroad Co.* v. *City of Pontiac, supra*). Even if it were true, that the erection and operation of a telegraph line is a public use inconsistent with the public use to which a railroad right of way is devoted, which is a question here not passed upon, yet there is legislative authority in this State for taking a portion of such right of way for the purpose of constructing and operating a telegraph line. Section 2 of chapter 134 of the Revised Statutes of this State in regard to telegraph companies provides, that every telegraph company, incorporated under the laws of this State, "may enter upon any lands for the purpose of making surveys and examinations with a view to the erection of any telegraph line, and take and damage private property for the erection and maintenance of such lines, and may, subject to the provisions contained in this act, construct lines of telegraph along and upon any railroad, road, highway, street or alley, along or across any of the waters or land, within this State, and may erect poles, posts, piers or abutments for supporting the insulators, wires and other necessary fixtures of their lines, in such manner and at such points as not to incommode the public use of the railroad, highway, street or alley, or interrupt the navigation of such waters." A telegraph company is thus empowered to construct lines of telegraph "along and upon any railroad." Under section 3 power is given to such company to exercise the right of eminent domain, when it may be necessary to take or damage any property. Counsel for appellants contend that the word "upon" here means "across," and that the legislature only intended to confer the right to

construct a telegraph line across the right of way.   It is furthermore said, that a "railroad" is a track upon which cars run, and that the legislature cannot have intended to confer the power to erect a telegraph line upon a railroad track.   The word "railroad" may sometimes mean the track or ground upon which the rails, constituting the track, are laid, or it may mean the right of way, including the track and the land on either side of the track, according to the connection in which the words are used.   The telegraph line may be built "along and upon" the railroad.   The word "along" indicates, that the construction is to be lengthwise, and the very fact, that a construction upon the track cannot have been contemplated by the legislature, would lead to the conclusion, that the construction is intended to be upon the right of way and along the same.   Where the language of the statute is plain and free from ambiguity, and expresses a single, definite and sensible meaning, that meaning is conclusively presumed to be the meaning, which the legislature intended to convey.   (Black on Interpretation of Laws, p. 35).

Counsel, however, refer to the case of *Postal Tel. Co. v. N. & W. R. R. Co.* 88 Va. 920, as supporting their contention in regard to this matter.   In the latter case, a provision of the Virginia Code, providing that telegraph companies may construct their lines "along and parallel to any of the railroads of the State," was held not to authorize the condemnation of a right of way by a telegraph company along and upon the right of way of a railroad company.   It will be observed, that the language there was different from the language here.   There the words are "along and parallel to;" here the words are "along and upon" any railroad.   A careful reading of that case will show, that, if the words there had been the same as the words here, their meaning would have been, in the opinion of the court, along the right of way and parallel to the track.   In Louisiana, however, the words "along

and parallel to" were held to have a different meaning
from that given to them in the Virginia case.    In *Postal
Tel. Cable Co.* v. *M. L. & T. R. R. and S. S. Co.* 49 La. Ann. 58,
(21 So. Rep. 183,) an act of the legislature of Louisiana
authorized "the construction of telegraph lines along and
parallel to any of the railroads" in that State; and it was
held by the Supreme Court of Louisiana, that the act in
question gave the right to construct a telegraph line over
a railroad's right of way.    (*Postal Tel. Cable Co.* v. *La. W.
R. R. Co.* 49 La. Ann. 1270;  22 So. Rep. 219).    If an act,
which authorizes a telegraph line to be constructed
"along and parallel to" a railroad, authorizes its con-
struction upon the railroad right of way, it is certainly
true, that an act, which authorizes a telegraph line to be
constructed "along and upon" any railroad, confers the
power to construct it lengthwise upon the right of way.
Mr. Lewis, in his work on Eminent Domain, at section
269, says: "A telegraph line may be built along a railroad
right of way, it being no material interference with the
use for railroad purposes."    In Alabama a statute pro-
vided, that any telegraph company, incorporated in that
or any other State, "shall have the right to construct,
maintain and operate lines of telegraph along any of the
railroads or other public highways in the State of Ala-
bama," but "so as not to obstruct or hinder the usual travel
on such railroad or other highway."    And it was held in
that State, that such statute authorizes the appropria-
tion by eminent domain proceedings of a right of way for
a telegraph line along and upon a railroad right of way.
(*N. O. M. & T. R. R. Co.* v. *S. & A. Tel. Co.* 53 Ala. 211).

*Seventh*—The appellants complain, that the county
court overruled their motion to compel appellee to file a
plat of the location of its proposed line.    The overruling
of this motion was not error.    The case of *Chicago and
Northwestern Railway Co.* v. *Chicago and Evanston Railroad
Co.* 112 Ill. 589, is referred to to sustain this objection.
In that case the facts, which it is not necessary here

to state, show that an affidavit was filed setting up the
necessity of a plat, in order to make manifest the use to
which the petitioner designed to devote the land sought
to be condemned. But here a plat, if filed, could not give
a more intelligible statement of the manner in which the
appellee proposed to construct its telegraph line, than is
set forth in the petition. A plat would have added no
force to the description in the petition, or made the loca-
tion any more intelligible. No showing was made by way
of affidavit, or otherwise, as to the necessity of such plat.

*Eighth*—The next objection is, that the petitioner
failed to show any real effort to agree prior to the begin-
ning of the suit. We have already seen, that the aver-
ments of the petition upon this subject were sufficient.
The contention now is, that the proof introduced did not
show that there was an endeavor made to agree, and a
failure to agree. This objection also is without force.
The testimony shows, that a representative of the tele-
graph company went to the vice-president of the Mobile
and Ohio Railroad Company and tried to procure the
right to construct a telegraph line upon the right of way
in question. The vice-president of the company declined
to agree to the construction of the telegraph line, upon
the ground that the Mobile and Ohio Railroad Company
had a contract with the Western Union Telegraph Com-
pany, by which it had agreed to give the Western Union
Telegraph Company the entire right of way, lands and
bridges of the railroad company, and any extensions and
branches thereof, for the construction, maintenance and
operation of a line of poles and wires; and upon the
ground, that, by the terms of such contract, the Western
Union company was authorized to use the name of the
Mobile and Ohio Railroad Company to resist any effort,
on the part of any competing line, to construct on said
right of way any competing telegraph line. In other
words, the Mobile and Ohio Railroad Company refused
to grant the privilege asked, because of an existing con-

tract, which gave the Western Union company the exclusive use of the railroad right of way for telegraph purposes. Such a contract has been held void, as being against public policy. (*Western Union Tel. Co.* v. *American Union Tel. Co.* 65 Ga. 160; *N. O. M. & T. R. R. Co.* v. *S. & A. Tel. Co. supra*). As the Mobile and Ohio Railroad Company had a lease of the right of way, which was not to expire for thirty-four years, a refusal on its part to allow the appellee to construct its telegraph line rendered such construction impossible, without reference to what the lessor, the St. Louis and Cairo Railroad Company, might have to say in the matter. The testimony, however, shows that the appellee, through a proper representative, made an effort to induce the latter railroad company to make an agreement with it for the construction of the telegraph line upon the right of way in question, but failed to effect such agreement. We are of the opinion, that this testimony showed sufficient effort on the part of the appellee to agree upon compensation with the appellants, and also showed a failure of such efforts. Where an owner refuses to sell altogether, negotiation as to the amount of compensation is thereby cut off. (*Bowman* v. *Venice and Carondelet Railway Co. supra; Booker* v. *Venice and Carondelet Railway Co.* 101 Ill. 333; *Thomas* v. *St. Louis, Belleville and Southern Railway Co.* 164 id. 634). It is not necessary, that there should be a series of efforts, or a prolonged negotiation, in order to agree upon compensation; an effort to agree is all that is required. (*In re Village of Middletown*, 82 N. Y. 786). There was, here, on the part of the railroad companies, a refusal to accede to any terms of agreement in regard to the compensation and damages, and that refusal was based upon the existence of the illegal contract already referred to.

*Ninth*—The appellants, upon the trial below, made a motion for leave to file a cross-petition. This motion was denied, and its denial is assigned as error. The court below did not err in this regard. The petition in this case

sufficiently describes the right of way, extending from East St. Louis to Cairo, and seeks to condemn a part of such right of way. In a condemnation proceeding in this State, the defendant has the right to file a cross-petition, where other property, not described in the petition, is damaged. But, if the property alleged to be damaged, as well as the property which is taken, is described in the petition, no cross-petition is necessary. In *City of Bloomington* v. *Miller*, 84 Ill. 621, which was a proceeding by the city to condemn land for a street, a part of a certain lot was sought to be so condemned, and the lot was described in the petition; it was there held, that damages as to the part, not sought to be appropriated, might be allowed without any cross-petition by the owner. In that case, in referring to the case of *Mix* v. *Lafayette, Bloomington and Mississippi Railway Co.* 67 Ill. 319, we said (p. 623): "In that case, the damages relied upon related to property not mentioned in the petition, no part of which was taken or even touched by the proposed improvement. In this case, as we understand the record, this lot 10 is a part of the property mentioned in the petition, from which a part is proposed to be taken. * * * The ascertainment of the just compensation to the owner for taking away a part of his lot of necessity involves the consideration of the value of the whole property intact, and the value of that part of the lot not taken, when contemplated as after the proposed part shall have been taken. This subject matter needed no cross-petition." In *Illinois Western Extension Railroad Co.* v. *Mayrand*, 93 Ill. 591, it was held, that a cross-petition was not necessary to obtain damages to the remainder of lands not taken, where the petitioner sought to take only a portion of such entire tract, the court saying: "Where the petition, as in this case, shows that the defendant is the owner of an entire tract of land, and that the petitioner proposes to appropriate a strip running through the tract described, there can be no need of a counter petition." In the case at bar, the cross-

petition of the appellants described no property by metes or bounds or otherwise, nor did it show that the appellants owned property in addition to the right of way. The cross-petition alleged, that "these defendants are entitled to damages to their property, contiguous to the property to be taken, which will be damaged by the erection and maintenance by the proposed telegraph," etc. The contiguous property, here referred to, is simply the remainder of the right of way, after taking out the portions sought to be condemned for telegraph purposes, which right of way was described in the petition. In describing it, the petitioner brought within the terms of the petition all the property of the railroad company, which could be damaged by the proposed improvement. Hence, no cross-petition was necessary. The refusal in nowise prejudiced the defendants, because they were allowed to introduce testimony for the purpose of showing, that the right of way in question would be damaged by reason of the construction of the telegraph line. "Where part of the lot or tract only is taken, a cross-petition is not necessary, in order to obtain damages to the part not taken." (Lewis on Eminent Domain, sec. 316).

*Tenth*—It is next contended by appellants, that the county court of Jackson county was without jurisdiction as to any part of this land outside of that county, and that, if the court had jurisdiction as to any land outside of that county, it should have directed the jury to go upon the lands in the other counties, as well as those in Jackson county. This contention would have great weight, if it were not for the express language of the statute of Illinois upon this subject. As a general rule, where land lies in one county, proceedings *in rem*, affecting the same, cannot be carried on in another county. *Prima facie* a proceeding *in rem* is local, and jurisdiction thereof is confined to the courts of the locality where the property is situated. While such is the general rule, the legislature has the undoubted power to modify or change the rule.

It is only when there are no statutory provisions to the contrary, that condemnation proceedings should be instituted in the county, in which the land taken or affected is situated. (Lewis on Eminent Domain, sec. 316). "Unless the statute prescribes otherwise, the proceedings must be brought in the county where the land lies, even though the works effecting the damage are in another county." (7 Ency. of Pl. & Pr. 478).

It becomes necessary, therefore, to examine the statutory provisions in this State upon this subject. Section 3 of chapter 134 of the Revised Statutes in regard to telegraph companies provides, that, "when it shall be necessary for the construction, alteration or repair of any line of telegraph to take or damage any property, the same may be done, and the compensation therefor ascertained and made, in the manner which may be at that time provided by law for the exercise of the right of eminent domain." When reference is made to the Eminent Domain act, which provides by law for the exercise of the right of eminent domain, section 2 of that act is found to provide, that, in all cases where the right to take private property for public use has been heretofore or shall be hereafter conferred by general law upon any corporation, it shall be lawful for the party authorized to take or damage the property so acquired, "to apply to the judge of the circuit or county court, either in vacation or term time, where the said property, or any part thereof, is situated, by filing with the court a petition," etc. (1 Starr & Curt. Ann. Stat. p. 1042). In the case at bar, the petition for condemnation has been filed in the county court of Jackson county. A part of the railroad right of way, which is sought to be condemned, is situated in Jackson county. Hence, although the rest of the right of way is situated in counties other than Jackson county, the condition prescribed by the statute here exists. The statute does not state that, when the property is situated in more than one county, a petition must be filed in each

one of said counties, but it does state, that the application may be made to the judge of the county court where any part of the property is situated. In addition to the provision thus referred to, contained in section 2 of the Eminent Domain act, section 2 of the Practice act reads as follows: "Actions against a railroad or bridge company may be brought in the county where its principal office is located, or in the county where the cause of action accrued, or in any county into or through which its road or bridge may run." Here, the railroad of the appellants runs through Jackson county, and, therefore, this condemnation proceeding is properly brought in such county under the terms of said section of the Practice act. We are of the opinion, that the contention of the appellants, that there was a lack of jurisdiction in the county court of Jackson county, because all the right of way did not lie in that county, cannot prevail in the light of the power thus expressly conferred by the Eminent Domain and Practice acts upon the county court. Three jurisdictional facts here exist: First, the telegraph company has authority to condemn; second, it may apply to the judge of the circuit or county court where said property, or any part thereof, is situated; and third, actions against a railroad company may be brought in any county into or through which its road may run. These statutory provisions are plain and free from ambiguity, and their meaning will be presumed to be the meaning which the legislature intended to convey. Courts cannot tamper with the clear and unequivocal meaning of the words used, even though the consequences appear not to have been such, as were contemplated by the legislature. (23 Am. & Eng. Ency. of Law, p. 298). Here, however, it cannot be said, that any consequences will follow from the interpretation thus given to the statute, which were not intended by the legislature. If a special condemnation proceeding should be instituted in each one of the counties, through which

the right of way runs, there would be in all of such suits the same petitioner, the same defendants, and the same right of way. Under such circumstances, it hardly seems necessary to file seven different petitions in seven different county courts in seven different counties to condemn the same right of way in all the seven counties. Such a course would be to subject the people of the State, without any good reason, to the costs and annoyance of seven different lawsuits, and the petitioner to the delay consequent upon the bringing of so many proceedings.

It is said, however, that the statute contains no provision for recording a condemnation judgment, rendered by the county court of Jackson county, in the recorder's office, or elsewhere, in any other county. While there may be no such statutory provision, it is at the same time true, that the recorder's office in each of the other counties, in which the proceeding was not begun, is open to receive the record of the decree or judgment rendered in the county where the proceeding was begun. The Partition act of this State provides, that a petition for partition may be filed in the county where the premises or some part thereof is situated, and that every person having any interest, who is not a petitioner, shall be made a defendant to such petition, and that, if the lands lie in different counties, the court may appoint separate sets of commissioners for each county, or one set for all of them, as may seem best for the parties interested. Under this statute no difficulty has ever been experienced in the institution of partition proceedings, where the lands sought to be partitioned lie in different counties. The Partition act contains no provision, requiring the recording of the decree of partition, or the deed made under a sale in the partition proceeding, in any county other than that in which the proceeding was instituted. And yet it has never been supposed, that any party to such proceeding cannot file a copy of his decree, or his deed, in the county

where the lands, acquired by him in such partition pro-
ceeding, are situated. The possession, taken by the tele-
graph company of the portions of the right of way lying
in other counties than Jackson county, is notice of its
rights, and would put upon inquiry any person having
knowledge of such possession. In *Postal Tel. Co.* v. *Mor-
gans, etc. Co. supra*, and *Postal Tel. Co.* v. *La. W. R. R. Co.
supra*, proceedings were instituted in one parish in Louisi-
ana to condemn a right of way for a telegraph line upon
the entire railroad right of way running through a num-
ber of parishes; but the Supreme Court of Louisiana,
as will appear by a reference to these cases, had no diffi-
culty in sustaining a condemnation judgment, rendered
in the district court of one parish only. In the Louisiana
cases, the proceeding was sustained upon the ground
that the right of way was an entirety, and that one jury
could make an award of compensation for such entire
right of way, though passing through several parishes
or counties.

The defendants below made a motion, that the court
direct the jury to go upon the right of way sought to
be condemned in the other six counties, besides Jackson
county, through which the same ran. This motion was
overruled, and the overruling of it is assigned as error.
It appears from the verdict of the jury, that they went
upon the lands and right of way sought to be taken and
damaged. They so recite in their verdict. The appel-
lants themselves have shown in the record, that the jury
did go upon and view the right of way for a distance of
three miles in Jackson county, including the portion of
such right of way which passed through the city of Mur-
physboro. The defendants did not prove in any way,
that the right of way in any of the other counties differed
in any respect from the right of way in Jackson county.
Section 9 of the Eminent Domain act provides, that the
jury shall, at the request of either party, go upon the
land, sought to be taken or damaged, in person, and ex-

amine the same.   This section, however, does not require
the jury to go upon every part of the land sought to be
taken or damaged.   It would seem, therefore, that in this
case the action of the jury was in compliance with the
terms of the statute.   Counsel for appellants say, that
the court had no power to refuse their request, that the
jury go upon the lands in person and examine the same.
This may be true, but the request authorized by the stat-
ute was not refused.   It was only the request, that the
jury go upon the right of way in all the different counties,
which was refused.   If there were any improvements
upon the right of way in any of the other counties than
Jackson county, it does not appear that such improve-
ments were different from those in Murphysboro, which
were viewed by the jury.   We are of the opinion, that the
court below committed no error in overruling said motion.

*Eleventh*—Appellants claim, that the court below erred
in admitting evidence for the petitioner, and excluding
evidence offered by the defendants, and also in giving
instructions for the petitioner, and in refusing instruc-
tions asked by the defendants, and in modifying certain
of the instructions, asked by the defendants, and giving
the same as modified.   It is impossible for us to notice all
the objections, growing out of the admission and exclu-
sion of evidence, and the giving and refusal and modify-
ing of instructions.   Objections, made by the appellants,
range themselves under several general heads, and ap-
ply as well to the instructions as to the evidence.   We
will consider this branch of the case under these general
heads, without entering into detail.

In the first place the appellee claims, that the com-
pensation to be paid to the appellants must be the value
of the ground occupied by each of the telegraph poles
erected upon the right of way; that the land taken is
nothing more than those portions of it upon which the
telegraph poles stand, or into which they are inserted;
that the rest of the compensation, to which appellants

are entitled, other than for the land thus taken, consists merely of the damages accruing to the remainder of the right of way by reason òf the erection of the telegraph poles and the stringing of the wires upon the cross-arms thereon; and that, as to the spaces between the telegraph poles, over which the wires near the top of the poles are strung, such spaces are not land taken. On the contrary, the appellants contend, that, by the construction and operation of the telegraph line, the appellee not only takes the ground occupied by the telegraph poles, but that the strip of ground, as wide as the cross-bars, over which the wires are strung, is also land taken. In other words, the appellants claim that the appellee takes that part of the right of way over which the wires, extending from pole to pole, are strung. The theory of the court below, in its rulings upon the evidence and in the giving and refusal of instructions, was, that the appellants were entitled, for their just compensation, to the value of the land actually taken by the erection of the poles, and to such damages, as were done to the right of way by the erection of poles and by the stringing of the wires thereon. This theory is sustained by reason, and by the previous holdings of this court. In the present case, the petitioner introduced evidence, showing that the land, embraced within the right of way throughout its whole extent, was worth from $25.00 to $40.00 per acre, and that the actual ground to be occupied by all the telegraph poles to be erected upon the whole right of way amounted to an eighth of an acre. In *Mutual Union Tel. Co.* v. *Katkamp*, 103 Ill. 420, testimony was introduced, showing what the land, upon which it was proposed to construct a telegraph line, was worth per acre. The appellants below introduced no evidence as to the value per acre of the land to be taken by the erection of the telegraph poles, but introduced witnesses, who stated that the compensation to be awarded to the railroad company for the construction of the telegraph line on its right of way should

not be less than certain sums of money per mile, said amounts varying from $100.00 to $250.00 per mile. Upon what basis the land for railroad purposes was estimated to be worth $100.00 per mile, or $150.00 per mile, or $250.00 per mile, does not appear. "Testifying to amounts of damages, where there is no basis of damage, is of no value as evidence." (*Mutual Union Tel. Co.* v. *Katkamp, supra*). The appellants claim, that the spaces, one hundred and seventy-five feet long between the telegraph poles, should be regarded as lands taken. We cannot agree with this contention. The spaces, over which the wires are strung from pole to pole, are not taken by the telegraph company. Such damage, as the construction and operation of the telegraph line cause to the spaces between the poles, the appellants are entitled to recover. The telegraph company does not acquire, by the judgment of condemnation, the fee to any portion of the right of way. Any construction, which holds that it does acquire the fee, is not sanctioned by the language of the act in relation to telegraph companies. The act does not confer the right to use the land condemned for any other purpose than for telegraph purposes. The company cannot take possession of it, or injure it, for any other purpose than to erect telegraph poles, and suspend wires upon them, and to maintain and repair the same. The company will have the right to enter upon that portion of the right of way, which is between the telegraph poles and under its wires, for the purpose of repairing its line. But the telegraph company acquires no right to exclude the railroad company from the use of the land. The ownership of the railroad companies remains as it was before, while the telegraph company merely acquires an easement upon what it condemns, for the purpose of entering thereon in order to erect and repair the line. (*Lockie* v. *Mutual Union Tel. Co.* 103 Ill. 401). In the *Lockie* case we said: "The only exclusive right of occupancy the company acquires by such a proceeding, is the occupancy

of the ground occupied by the poles erected for telegraph purposes." The spaces between the telegraph poles, and over which the wires are strung, are used jointly by the railroad company and the telegraph company, by the former for such purposes as are appropriate to a railroad right of way, and by the latter in the exercise of its right to the easement already referred to. Inasmuch as the telegraph company does not take the exclusive use of the remainder of the right of way not occupied by the poles, and, inasmuch as the railroad company still continues to use the same, it cannot be said that such remainder is taken by the condemnation proceeding. It is merely damaged to the extent to which the telegraph company has an easement, or the right to enter, for the purpose of constructing and repairing its line. The measure of damages, therefore, suffered by the railroad company, is not the value of the land embraced within the right of way between the poles and under the wires, but the measure of damages is the extent to which the value of the use of such spaces by the railroad company is diminished by the use of the same by the telegraph company for its purposes. In *Chicago, Burlington and Quincy Railroad Co.* v. *City of Chicago*, 149 Ill. 457, where the city sought to condemn the right to extend a street over the railroad right of way, including its tracks, we held that the value of the land embraced within the crossing is not the measure of just compensation for such interest as may be taken, but that the measure of compensation is the amount of decrease in the value of the use for railroad purposes, caused by the use for purposes of a street, such use for the purposes of a street being exercised jointly with the use by the company for railroad purposes. The same doctrine is applicable here, so far as the spaces between the telegraph poles and over which the wires are strung, are concerned, the use of such spaces for telegraph purposes being exercised jointly with the use of the same by the companies for railroad purposes. The verdict ren-

dered by the jury below is not inconsistent with the mode of ascertaining the compensation as here outlined.

It is said, however, that, at some future time, the railroad company may conclude to lay down another track, and that, if it does so, the telegraph poles will be in the way as an obstruction.   It is also said that, at some future time, the railroad company may conclude to erect certain structures upon its right of way for railroad purposes, and that the erection thereof will be hindered and interfered with by the telegraph wires stretched from pole to pole.  Such damages might be regarded as remote in character, in view of the fact, that the evidence does not show any immediate demand for the construction of such additional track, or for the erection of the structures referred to.   But, whether such damages be regarded as remote or not, the petition in this case contains the following statement: "And in the event that said railroad company shall at any time desire to change the location of its tracks, or construct new tracks, or sidetracks, where the same do not now exist, the petitioner hereby consents to remove such poles to such other point or points on the said right of way adjacent thereto, which shall be designated by said railroad company, upon reasonable notice, and at the expense of petitioner."  The petition also states, that in case of the erection of any structures by the appellants upon the right of way, the wires will be suspended high enough to prevent any interference therewith.  These allegations in the petition are in the nature of stipulations, to which the petitioner binds itself.   Such stipulations have been held valid by the decisions of this court. (*Chicago and Alton Railroad Co.* v. *Joliet, Lockport and Aurora Railway Co.* 105 Ill. 388; *Peoria and Pekin Union Railway Co.* v. *Peoria and Farmington Railway Co.* 105 id. 110).  Indeed, section 2 of the act in regard to telegraph companies only authorizes such companies to construct lines of telegraph along and upon railroads, and to erect poles for supporting the insula-

tors and wires of their lines, upon condition that such construction and erection are done "in such manner and at such points, as not to incommode the public use of the railroad." It is a condition precedent to the erection of the telegraph line, that the public use of the railroad shall not be incommoded. The telegraph company accepts the right to put its line upon the railroad right of way, subject to the condition that it does not incommode the use of the railroad. In view of this provision of the statute, and in case the telegraph line is constructed as directed by the statute, the railroad company will not suffer any damage by reason of being incommoded in the use of its right of way. We are, therefore, of the opinion that the court below committed no error in its rulings in regard to the evidence, or in regard to the giving or refusal of instructions, so far as its action was based upon the theory, that the spaces between the telegraph poles and under the wires were not taken by the condemnation proceeding. Its action in the respects mentioned, having been based upon the theory, that only the spaces occupied by the poles were taken, and that the spaces between the poles and under the wires were damaged only by the use of the same in the manner stated, was in our opinion correct.

In the second place, it is claimed by the appellants, that the appellee must make compensation proportionately for the costs and expenses, to which the appellants are alleged to have been subjected in putting the right of way in condition. In other words, it is said, that the appellee cannot avail itself of improved conditions without compensation. No evidence was introduced here on behalf of the appellants, to show, that any work had been done by them, or any expenses incurred by them, in clearing the right of way along and upon which the appellee's telegraph line is proposed to be located. The petition expressly avers, that, if there has been any transformation of the surface of the earth into shape and condition

to fit it for a railroad bed, the petitioner does not intend to set poles and suspend wires at the points where such transformation has taken place. We cannot say in this case, that the appellee is entitled to be mulcted in damages by reason of availing itself of any improved conditions created by the appellants. In the Louisiana cases referred to it appeared, that the railroad right of way ran for miles through swamps, timbered and not timbered, and that such timbered and swamp lands had been made available for a right of way at a cost of much labor and money, and had been kept clear and in suitable condition at a considerable expense, the maintenance of it in such condition being necessary for the proper and safe operation of the railroad trains. No such state of facts exists here, where the right of way for the most part is level prairie land. Under the instructions of the court, the jury were authorized to award, as compensation to the appellants, the value of the ground taken for the erection of the telegraph poles, and, if such ground had an increased value by reason of being improved in the manner stated, the appellants had the benefit of it at the hands of the jury under the instructions.

The rulings of the court in regard to the evidence and instructions, so far as they refused to make what counsel call improved conditions of the right of way a basis for the award of compensation, were not erroneous.

In the third place, appellants claim, that the trial court erred in refusing to allow them to prove, that the railroad companies, or one of them, had rented the use of their right of way to other telegraph companies at certain amounts per year, and that the rents so received should be taken into consideration in establishing the amount of compensation to be awarded. There was no error in the action of the court in this regard. The contract of lease with another telegraph company, which it was proposed to prove, gave such telegraph company the exclusive use of the railroad right of way, and, therefore,

was void upon grounds of public policy, as being in restraint of trade, and as creating a monopoly. (Croswell on Electricity, sec. 45). In addition to this, the contract of lease, which it was proposed to prove, gave the use of the telegraph line to the railroad for its trains, so that the railroad company was authorized to use the telegraph line in sending its own dispatches, and in moving its trains, and in managing its own business. It was not shown, nor was it proposed to show, how much such use of the telegraph lines by the railroad was worth. The contract of lease, therefore, was not sufficiently definite, as to the amount received by the railroad company from the telegraph company, to indicate what was the rental value of the privilege of erecting and operating a telegraph line upon the right of way, even if the amount of rent paid by the telegraph company to the railroad company, was competent evidence for the purpose of fixing the amount of compensation to be awarded. It does not appear, that the rental value proposed to be proven was any criterion of the value of the easement proposed to be taken by the present appellee.

*Twelfth*—It is furthermore claimed by the appellants, that there is a variance between the petition and the verdict and judgment in the present case, and that the judgment is void for uncertainty. This objection is without force. The petition proposes the construction of a telegraph line through the entire length of the railroad right of way from its commencement in East St. Louis to its termination in Cairo. The verdict and judgment only cover the route, which begins at the corporation line of East St. Louis, and extends to the corporation line of Cairo. That is to say, the appellee abandoned so much of the petition, as asked for the construction of its telegraph line on the railroad right of way inside of the city limits of East St. Louis and Cairo. The verdict and judgment gave less than the petitioner asked for. The only party having a right to complain of this would be the

appellee, and not the appellants.    A party will not be
allowed to complain of an act, that does not injuriously
affect him or his interests.    (*Gage* v. *DuPuy*, 134 Ill. 132).

The judgment is said to be void for uncertainty, be-
cause it describes the location of the line as the same is
described in the petition, to-wit:  "At a distance of not
less than twenty-five feet from the outer edge of said
railroad track upon the east side of said track, or at such
points as may be agreed upon by said telegraph company
and the railroad company operating said road."   The
uncertainty is said to consist in the alternative character
of the location, as above described.   We see no objection
to the form of the judgment as here set out, and do not
regard it as being void for uncertainty.   After the judg-
ment of condemnation is entered, if the parties, instead
of having the line located twenty-five feet from the outer
edge of the track, choose to agree upon some other point
or line of location, there can be no reasonable objection
to such change.

The judgment of the county court is affirmed.

*Judgment affirmed.*

Mr. CHIEF JUSTICE CARTER, and Mr. JUSTICE CART-
WRIGHT, dissenting.