MOBILE & OHIO RAILROAD CO. *v.* POSTAL TELEGRAPH-CABLE CO.

1. EMINENT DOMAIN. *Telegraph companies. Railroad right of way. Condemnation. Measure of damages.*

The measure of a railroad company's damages on condemnation of its right of way for a telegraph line is not the value of the land embraced within the right of way between the poles and under the wires, but the extent to which the value of the use of such spaces by the railroad company is diminished by the telegraph company's use of the same for its purposes. *Postal Tel. Co.* v. *Ala., etc., Ry. Co.*, 68 Miss.. 314, overruled.

2. SAME. *Change of route by railroad. Remote contingency.*

The possibility that a railroad company may in the future change its route and use for other purposes the land embraced in its right of way does not operate to make such possible use an element of damage on condemnation of the right of way for a telegraph line, the contingency being too remote.

3. SAME. *Obstruction of future tracks. Agreement to remove poles.*

That telegraph poles on a railroad right of way may be in the way of such tracks as the railroad company may thereafter lay is not an element of damage on condemnation proceedings by the telegraph company when it agrees in such case, on reasonable notice, to remove the poles, at its own expense, to any other adjacent point on the right of way designated by the railroad company.

4. SAME.  *Contract with other telegraph company.  Exclusive right.*

> A contract between a railroad company and a telegraph company
> providing that the latter shall have the exclusive right to con-
> struct and operate a telegraph line along the former's right of
> way is in restraint of trade, and void, in so far as it purports to be
> exclusive, and is of no effect to prevent condemnation proceedings
> by another telegraph company.

FROM the circuit court, second district, of Chickasaw county.
HON. E. O. SYKES, Judge.

This was a proceeding under the eminent domain chapter,
code 1892, by the Postal Telegraph Cable Co., plaintiff, against
the Mobile & Ohio Railroad Co., defendant, for the condemna-
tion of the right of way of defendant in Mississippi, extending
from the Alabama state line on the south to the Tennessee state
line on the north, for the purposes of construction, maintenance
and operation by the plaintiff of a line of electric telegraph over
the lands constituting defendant's right of way, the said right of
way being limited, except for some special purposes, to a strip of
the width of one hundred feet throughout defendant's whole line
in Mississippi.    In the special court, provided for by the code
chapter, the jury returned a verdict of condemnation as prayed
for, awarding defendant, by way of damages, a sum of money
per mile amounting, in the aggregate, to the sum of $3.00, and
from the judgment entered thereon the defendant appealed to the
circuit court and there filed the following special pleas: First,
that its right of way was one hundred feet in width through the
state, and that it had built and was operating thereon a single
track railroad; that such right of way was secured and improved
by it at great expense for the purpose of maintaining its track
thereon, and that all of it was necessary to the exercise by it of
its chartered rights, whereas the condemnation of any part of it
by the telegraph company was not necessary for its purposes, be-
cause there were other lands in the immediate vicinity, easily
accessible, to be acquired by purchase or condemnation, for its
use.    Second. That in order to conduct its business as a rail-

road, it was necessary to have upon its right of way a telegraph line, and for that reason it had contracted with the Western Union Telegraph Company to furnish it the necessary telegraphic facilities, giving in consideration thereof certain exclusive telegraphic rights over said right of way, and that the entire one hundred feet was necessary for its purposes as a railroad company and those of the Western Union Telegraph Company, while the condemnation of any part of it was not necessary for petitioner's purposes, there being land immediately adjoining, easily susceptible of being acquired by purchase or condemnation for petitioner's purposes. Third. That as to that part of said right of way from Tupelo to Meridian, and from Starkville and Columbus to the defendants' main line, the petitioner already had a line of telegraph in operation on a right of way acquired by purchase or condemnation, and therefore had exhausted its power of condemnation for "new lines" between those points. Fourth. If the condemnation should be decreed, it claimed compensation for its property that would be taken and damaged at the rate of $200 per mile and $50 additional per annum, which damage the defendant would sustain. To all of these pleas the plaintiff, the telegraph company, demurred, admitting the allegations of the pleas, but denying that defendant was entitled to any but nominal damages. The court sustained the demurrer as to the first three pleas, but overruled it as to the fourth. The cause was then tried *de novo* in the circuit court, and resulted in a verdict of condemnation, whereby damages were assessed at $310.00, or one dollar per mile, instead of $3.00, as in the special court. From the judgment entered upon this verdict defendant appealed to the supreme court.

*Bristow & Sykes*, for the appellant.

The plaintiff was not entitled to a judgment of condemation as a matter of course. The question is one for the determination of the courts and depends upon proof of a necessity for taking the particular property. That it is more convenient for the plaintiff to run its line along the defendant's right of

way and thus appropriate the fruits of defendant's labor and money does not meet the requirement of the law.     Lewis on Em. Dom., sec. 393.

The property and franchises of one corporation cannot be taken from it and given to another under color of legislative authority without doing violence to rights secured by the fundamental law.     Scott and Jar. on Tel., sec. 9; Lewis on Em. Dom., sec. 267; *Power Co.* v. *Boston, etc., R. R. Co.*, 23 Pick., 393; *Bridge Co.* v. *Dix*, 6 How. (U. S.), 537; *Dartmouth College* v. *Woodward*, 4 Wheat, 658; *Pensacola Tel. Co.* v. *W. U. Tel. Co.*, 96 U. S., 1; *Railroad Co.* v. *Rich*, S. C., 228; 1 Woods Railway Law, sec. 170; *Telegraph Co.* v. *Rich*, 19 Kan., 517; *Prather* v. *Tel. Co.*, 89 Ind., 501; *Railroad Co.* v. *Tel. Co.*, 21 Hun (N. Y.), 261.

By a contract between the defendant, Mobile & Ohio Railroad, and the Western Union Telegraph Company, in consideration of the most extended, perfect and comprehensive telegraphic facilities guaranteed to be furnished by the telegraph company to the railroad company, the latter company, with a view of securing a more perfect telegraph service than it could possibly do by constructing, maintaining and operating an individual system of its own, and in the interest of the safety and the convenience of the commercial and traveling public, granted and assigned to said telegraph company the entire and exclusive right of way, franchise, land, bridges and structures in the State of Mississippi for the purpose of the construction, maintenance and operation of the line or lines of telegraph thereon, with divers other exclusive rights and privileges, not necessary to be referred to in this case.     Assuming that telegraph facilities are now not only incidental, but necessary, for the proper carrying on of the railroad business under its charter, and that the railroad corporation may contract for such service with an independent telegraph company—propositions which we assume will not be disputed — the question here recurs, is the contract referred to, and set out in the second plea, legal, and,

under the contract, and the circumstances as shown in the evidence, is the defendant railroad company legally bound by that contract, and has the telegraph company the legal right thereunder, and, under the facts of the case, to claim the entire and exclusive right of constructing, maintaining and operating a line of telegraph on and over the right of way of the said defendant railroad company during the existence of that contract? And we submit the contract is a legal one, and that, under that contract and under the circumstances set up, the railroad company is bound by it and the telegraph company has such exclusive right.

Certainly, if a state can make exclusive grants of this kind, even subject to the power of eminent domain, a private owner of property, in the absence of constitutional prohibition, may do the same by private contract. In fact, condemnation under the right of eminent domain is nothing more nor less than a private sale of the owner, which (for certain public considerations) he is compelled to make, and it is well established that whatever property a railroad company is authorized to hold it may lawfully convey. *McAlister* v. *Plant*, 54 Miss., 119.

" Exclusive franchises may be granted to individuals as well as to corporations, and the incorporated companies have the right to purchase such exclusive rights from individuals and to succeed to all the rights and privileges which the franchises confer." "The legislature has undoubtedly the right to grant such exclusive franchises." *California State Tel. Co.* v. *Alta Tel. Co.*, 22 Cal., 398; *Telegraph Case*, 96 U. S., 1; 25 Am. & Eng. Enc. L., 758. Contracts of this character are upheld in Illinois. See *Telegraph Co.* v. *Railroad Co.*, 86 Ill., 246, s.c., 29 Am. Rep., 28.

And exclusive legislation by the states in such cases has been approved in the courts of many of the states. *Boston, etc., Railroad Co.* v. *Salem, etc., Railroad Co.*, 2 Gray, 1; *Bridge Co.* v. *Bridge Co.*, 11 Peters, 420, 540; *Bridge Co.* v. *Railroad Co.*, 6 Paige, 554; *Canal Co.* v. *Railroad Co.*, 8

Paige, 323; *vidi* also 25 Am. & Eng. Enc. L., 758; 2 Beach Priv. Corp., sec. 405*b; Western Union Tel. Co.* v. *Atlantic & Pacific Tel. Co.;* 7 Bissell C. C. Rep., 367; Express Cases, 117 U. S., 1.

As to the objection that such contracts are in "restraint of trade," tending to create monopoly," etc., we need say but a word. A very large latitude has been allowed by the authorities in making such contracts, a familiar instance being the sale of a business, with agreement by the vendor not to engage in the same business within reasonable limits of time and place, etc., and generally all contracts of this character not so unreasonable as to be injurious to the public have been upheld by the courts. *Chappell* v. *Brockaway*, 21 Wend., 157; *Richardson* v. *Wellish*, 2 Bing., 229; *Palmer* v. *Stebbins*, 3 Peck, 193; *Anderson* v. *Faulconer*, 30 Miss., 145; *Klein* v. *Buck*, 73 Miss., 133.

It is a matter of fact that the petitioner has already a continuous line of telegraph constructed under its charter upon right of way acquired by contract or by exercise of right of eminent domain from Tupelo, in Lee county, to Meridian, in Lauderdale county, and laterally east and west to Columbus in Lowndes county, and to Starkville in Ocktibbeha county, all stations on the railway line of the defendant. Under these circumstances we submit the petitioner has exhausted its powers of condemnation under the right of eminent domain, and between the stations named can now change the location of their lines only by acquiring a right of way by private contract. *Lusby* v. *R. R. Co.*, 73 Miss., 360; *Brigham* v. *R. R. Co.*, 1 Allen, 316; *Morehead* v. *R. R. Co.*, 7 Ohio, 340; Taylor on Corp., secs. 163, 164.

The wrong perpetrated upon the defendant railroad company in the taking of its right of way for the purposes of the applicant telegraph company is emphasized and its wantonness exaggerated by the absurdity of the compensation allowed therefor by the jury of the special court, acting under the instructions

and in accordance with the ruling of the presiding justice of
·the peace.   The latter, on the exceptions òf counsel for the
petitioner, excluded from the jury all evidence offered by the
railroad company as to the actual value of the property sought
to be condemned and the damages resulting from its condemna-
tion, and confined the defendant to nominal damages, amount-
ing to about the estimated value of the land actually taken for
the post holes, viz., three dollars for nearly three hundred
miles right of way.   And this, too, in the face of the positive
requirement of the code of 1892, § 1690, that the justice shall
instruct the jury, in writing, that the defendant is entitled to
recover damages, and "due compensation, not only for the value
of the property to be actually taken," but also "damages which
may result " to the defendant " as a consequence of the taking;"
and in addition the jury are to be so instructed in writing that
nothing is to be deducted from such "compensation" or
"damages" on account of any supposed benefit which may
result from the taking.   And the jury, in their verdict, are re-
quired by the statute to find the amount " the defendant will be
damaged by the taking of his property."   Code of 1892, § 1691.

The constitution of Mississippi, sec. 17, provides that "pri-
vate property shall not be taken or damaged for public use,
without due compensation being first made."

And, in answer to the contention that the land taken for the
post holes is all we can claim compensation for, we submit that it
is overwhelmingly established that the mere construction of a
telegraph line over and along the right of way of a railroad, the
mere imposing of an easement or additional burden on the lands
constitutes such a "taking" of private property for public use,
as, under the constitution, demands "due compensation."
Even disregarding the doctrine of " *cujus est solum ejus usque ad
·coelum,*" and without the addition, which is made to our con-
stitution, of the words, "or damaged," after the word
"taken," the stringing of a line of telegraph wire over a
railroad right of way is an easement or burden that must be

paid for with "due" compensation.    Lewis on Em. Dom., sec. 156; 6 Am. & Eng. Enc., pp. 542, 556; *Brown* v. *Beatty*, 34 Miss., 227; *Vicksburg* v. *Herman*, 72 Miss., 211.

Though in our state after a street has been laid out by a city over lands of a citizen, the construction of a line of telegraph along that street is held to be an additional burden or servitude and the citizen is entitled to additional compensation from the telegraph company, though he has already received due compensation from the city.    *Stowers* v. *Telegraph Co.*, 68 Miss., 559.

And in the late case of *Herman* v. *Vicksburg*, 72 Miss., 211, the addition of the words "or damaged" after "taken" in the constitution of 1890 is held to materially add to the rights of the property owner in such cases.    On p. 215, Judge Woods says: "The burdens formerly borne by the citizens resulting from damage done his property by a diminution or destruction of his right to use and enjoy his own, were designed by this new constitutional rule to be placed upon those by whose action the diminution or destruction was wrought."    In other words, now, to warrant a demand for due compensation, there need be no "taking" at all—a mere detriment to or diminution of a party's right to use his property is sufficient.    The rule in Mississippi therefore, under the new constitution, is materially different from what it was before.    But even under the old constitution there can be no question that the condemnation of defendant's right of way in this proceeding would have been a "taking" within the constitutional inhibition.    *Telegraph Co.* v. *Railway Co.*, 68 Miss., 314; *Muller* v. *Railroad Co.*, 21 Barb., 513 ; Taylor on Corp., 470 ; *Railway Co.* v. *Chicago*, 140 Ill., 309.

In addition we prove that practically a railway track cannot be located nearer to the line of poles than five feet.    For all practical business purposes a line of telegraph poles, though one hundred yards apart, constitute a solid wall as against the railway trains; certainly it is as obstructive as a fence.    So if

the telegraph poles are planted in a line thirty feet from the outer rail, the defendant railroad company, for all its chartered purposes, is absolutely deprived of twenty and one-half feet of its right of way or more than one-fifth of it as stated before.

The telegraph, if planted anywhere on the defendant's right of way, in addition to the obstacle to the construction of new tracks, absolutely takes up, appropriates, fences in five feet of ground on each side, or ten feet in all. The court will understand at a glance that it is the line of poles that creates the obstruction, not the cross-arms. It is absurd to contend that the poles will only take up the little round hole every hundred yards or so, as might be said if the railroad company's only use for the land was to raise cotton or corn thereon. But the defendant acquired this one hundred feet to be used for railroad and incidental purposes, its tracks running through the state thereon, and it has the legal right to use every inch of the one hundred feet for such purposes, and it was clearly in the contemplation of the legislature that it would so use it. The defendant needs it now; in the near future it will need it much more. But petitioner cannot confine the compensation to the consideration of how much of this right of way is absolutely necessary now, or will be in the immediate future, for defendant's purposes. Notwithstanding the plausible hint of the condemnation being only temporary, there is no doubt it will be final between these parties, and petitioner will thereby legally acquire a perpetual right to occupy defendant's right of way for its telegraph purposes. It will thus acquire absolutely, as we have seen, for its purposes a strip over our right of way more than two hundred and sixty miles long and over twenty feet wide. If it were practicable now to go back half a century and calculate the amount paid by the defendant for the acquisition and improvement of its right of way in Mississippi one-fifth of the amount would appear startling.

In assessing "due compensation" for the taking of and damage to property condemned for public uses the courts are

not confined to a consideration of the purposes to which the land is already devoted.   They must also consider the purposes for which it is peculiarly fitted, and especially its adaptability to the petitioners.   6 Am. & Eng. Enc. L., 569.

In the leading case of *Boom Co.* v. *Patterson*, 98 U. S., 403, the doctrine of which is approved by our own court in *Railroad Co.* v. *Ryan*, 64 Miss., 399, the United States supreme court, on page 408, announced the following rule of compensation in such cases: "The inquiry in such cases must be, what is the property worth in the market, viewed not merely with reference to the uses to which it is plainly adapted; that is to say, what is it worth from its availability for valuable uses? Property is not to be deemed worthless because the owner allows it to go to waste, or to be regarded as valueless because he is unable to put it to any use.   Others may be able to use it and make it subserve the necessities or conveniences of life.   Its capability of being made thus available gives it a market value which can be readily estimated."   In that case the property sought to be condemned was an island in the upper Mississippi river, owned by Patterson, which, except for sawmill, lumber and boom purposes, was comparatively valueless; in fact, assessed by the jury for ordinary purposes at $300.   But on a condemnation by a sawmill boom company the same jury awarded Patterson a compensation of $3,000—just ten times the amount of its general value.   The supreme court, on appeal, sustained the verdict of $3,000, saying that "the adaptability of the land for the purposes of a boom was a proper element for consideration in estimating the value of the lands condemned."

In *Railroad Co.* v. *Ryan*, 64 Miss., 399, our supreme court holding the same doctrine, says: "Testimony that the land has a certain peculiar value for determinate purposes is admissible, even though it be not then used for any such purposes, and no one intends at the time to so use it.   If its adaptability to such purpose, or any of them, gives it a present value, the owner is entitled to such value."   To same effect: Lewis on Em. Dom.,

secs. 478, 479; *Sullivan* v. *Lafayette County*, 61 Miss., 271; *Longworth* v. *Railroad Co.*, 30 Ohio, 50, 108; *Goodin* v. *Canal Co.*, 98 Am. Dec., 95; *Bridge Co.* v. *Dix*, 6 How., U. S., 507; Taylor on Corp., sec. 178; *Vicksburg* v. *Herman*, 72 Miss., *supra*.

*J. R. McIntosh*, for appellee.

The necessity, expediency, or propriety of exercising the power of Eminent Domain, and the extent and manner of its exercise, are questions of general public policy, and belong to the legislative department of the government. They have nothing to do with the question of what constitutes public use. Lewis on Em. Dom., sec. 162.

Mills on Em. Dom., in sec. 11 of his excellent work, says: " If the use is entirely a public one, then the legislative authority over the subject cannot be constrained or supervised by the courts. Only when it is plainly perceived that there is an attempt to evade the law and procure the condemnation of property for a private use, or to accomplish an end not public in its character, will the courts declare the act void."

That the telegraph is a public use and designed for the services of the public there is no question.   Sec. 172 of Lewis on Em. Dom. says:  "A telegraph or telephone line designed for the services of the public and subject to regulation by the legislature is a public use for which property may be taken." Citing *Turnpike Co.*, *Am.*, etc., *News Co.*, 43 N. J. L., 381; *Pierce* v. *Drew*, 136 Mass., 75; *New Orleans R. R. Co.* v. *So. & Atlantic Telephone Co.*, 53 Ala., 211.   Under the laws of Mississippi, code 1892, telegraph companies are made subject to regulation by the Railroad Commission, as express and railroad companies are.

Thus, it is manifest that a use for telegraphic purposes is a public use, and, being such, it is within the power of the legislature to grant to a telegraph company the power to exercise the right of eminent domain; its necessity, therefore,

is not a question for the consideration of, or determination by, the courts.

. It not having been denied, in the pleas or otherwise, that the use was a public one, the court was compelled to regard it, under the authorities cited, as a public use, and, it being a public use, then the matter as to the necessity for the construction of its lines as prayed for in its petition was not a judicial one. There is nothing in section 184 of the constitution, or § 854, code 1892, which prohibits the exercise of the power of eminent domain by the telegraph company in this case. Section 184 of the constitution simply declares all railways to be public highways and common carriers, giving them the right to construct and operate railroads between any points in the state, and to connect at the state line with the roads of other states, and the right to intersect or cross any other railroad, etc. In § 854, code 1892, we find affirmative legislative authority for the telegraph company to construct its lines, etc., along and across any of the public highways and railroads in this state, subject to one limitation only—that is, "but the same shall be so constructed and placed as not to be dangerous to persons or property, nor interfere with the common use of such railroads, streets or waters more than may be unavoidable." In addition to that, chapter 40 of the code of 1892, as amended by act of 1897 (Laws, p. 13), provides for the creation of a special court of eminent domain, to consist of a justice of the peace and a jury, and gives a remedy, a mode of procedure, to any person or corporation having the right to condemn private property for public use, together with the right to a telegraph company to condemn so much of the right of way of a railroad as may be necessary for the construction, maintenance and operation of its lines thereon, and authorizing the same to be done, provided, only, that they are so constructed as not to interfere with the running of trains of said railroad company, nor the use and operation of any other telegraph line upon such right of way.

It is contended for appellant that its contract with the West-

ern Union Telegraph Company is legally valid and binding
upon everyone, and for that reason was a complete defense to
the petition of appellee, and by reason of it the will of the peo-
ple of Mississippi, as expressed through the legislature of the
state, as hereinbefore cited, should be thwarted, the necessity
of the public disregarded, and a great monopoly be encouraged
and maintained.   I respectfully submit that if there is any set-
tled law in this country, it is that a contract between a rail-
road company and a telegraph company, whereby the railroad
company gives to the telegraph company the exclusive use of
its right of way for telegraph purposes, is void as contrary to
public policy, tending to create a monopoly.   *United States* v.
*Union Pac. Ry.*, 160 U. S., 1; *W. U. Tel.* v. *B. & O. Tel.
Co.*, 23 Fed. Rep., 12, s.c. 1 Am. Elec. Cas., 721; *W. U.
Tel. Co.* v. *B. & O. Tel. Co.*, 22 Fed. Rep., 133, s.c. 1. Am.
Elec. Cas., 601; *B. & O. Tel. Co.* v. *W. U. Tel. Co.*, 24 Fed.
Rep., 319, s.c. Am. Elec. Cas., 677; *Pac. Postal Tel. Co.* v.
*W. U. Tel. Co.*, 50 Fed. Rep., 493, s.c. 4 Am. Elec. Cas.,
232; *W. U. Tel. Co.* v. *Am. Union Tel. Co.*, 65 Ga., 160,
s.c. Am. Elec. Cas., 306.   Where the railroad acquiesces in
a new telegraph company erecting its lines on its right of way,
the old rival telegraph company claiming an exclusive contract
cannot enjoin it.   *W. U. Tel. Co.* v. *Am. Union Tel. Co.*, 9
Biss., 72.   A state may authorize other telegraph companies
to condemn a right of way on a railroad right of way, notwith-
standing the railroad has contracted with a particular telegraph
company to give the latter an exclusive right to use the rail-
road right of way.   Not having an exclusive right to construct
a telegraph line along its right of way, a railroad company
cannot confer one.   *W. U. Tel. Co.* v. *Railroad Co.*, 19 Fed.
Rep., 660, *W. U. Tel. Co.* v. *Am. U. Tel. Co.*, 38 Am. Rep.,
781; *W. U. Tel. Co.* v. *Railroad Co.*, 11 Fed. Rep., 1; *Pen-
sacola Tel. Co.* v. *W. U. Tel. Co.*, 3 Otto, 124; 3 Am. & Eng.
Enc. L. (1st ed.), 885, 886; *N. O.*, etc., v. *Southern Tel. Co.*,
53 Ala., 211.   See, also, 43 Pac. Rep., 701, 3 Fed. Rep., 1;

91 U. S., 280; *W. U. Tel. Co.* v. *Atlantic, etc., Tel. Co.*, 7 Biss., 367; *W. U. Tel. Co.* v. *Chicago, etc., Tel. Co.*, 86 Ill., 246.

I insist that the damages allowable in this case cannot exceed "just compensation." That is all defendant can ask for; "just compensation" makes it whole. Hence I assert that "just or due" compensation, which are synonymous terms in this case, is but nominal damages. Lewis on Em. Dom., sec. 462, says: "Just compensation, as used in the constitution, means a fair equivalent for the loss sustained by taking for public use," citing *San Francisco Railroad Co.* v. *Colwell*, 31 Col., 367; *Alton & Sangamon Railroad Co.* v. *Carpenter*, 14 Ill., 190; *McIntyre* v. *State*, 5 Blackf., 384; *Sater* v. *Burlington & Mt. Burlington Plank Road Co.*, 1 Iowa, 386; *Bangor & Piscataquis Railroad Co.* v. *McCool*, 60 Maine, 290; *Winona & St. Peter Railroad Co.* v. *Denman*, 10 Minn., 367; *Lyman* v. *Cincinnati, etc., Ry. Co.*, 14 Ohio, 147; *Linsden* v. *New York, etc.*, 8 Windell, 85; *Madgett* v. *West Wisconsin, etc.*, 27 Wis., 478; *Chesapeake & Ohio Canal Co.* v. *McKay*, 3 Cranch, C. C., 599; *Brown* v. *Beatty*, 34 Miss., 234; *Isom* v. *Mississippi Railroad Co.*, 36 Miss., 300; Pierce on Railroads, 221; Sedgwick on the Measure of Damages, 662. All these authorities, however, have reference to the measure of damages to which an individual is entitled when his property is taken for public use.

But a railroad corporation acquires and holds its right of way upon altogether different terms, conditions and limitations than that of individuals. The individual acquires and holds his land for any and all purposes; the railroad acquires and holds its right of way for purely railroad purposes. . . . It cannot, as an individual, speculate upon it, or use it for any purpose other than railroad purposes. Hence it is that the courts of all states, since the decision of the supreme court of the United States in the case of *Chicago, Burlington & Quincy R. R. Co.* v. *The City of Chicago*, was handed down in April, 1897, (166 U. S., 226), have held in accordance with the prin-

ciple announced in that opinion, that the measure of damages to which the railroad company is entitled from the telegraph company, when a portion of its right of way is condemned for telegraph purposes, is altogether different from that to which an individual is entitled when his property is taken for the public use. See also Rorer on Railroads, pp. 300–1. Randolph on Eminent Domain, sec. 250, Citing *Toby* v. *Taunton*, 191 Mass., 404; *Whittaker* v. *Phoenixville*, 141 Pa., 327; *Stebbing* v. *Met. Bd. of Wks.*, 6 Q. B., 37; *Allen v. Boston*, 137 Mass., 319; *Railroad* v. *Catholic Priest*, 119 Ill., 529; *Halcot* v. *Bird*, 10 C. B., 327; *Allen* v. *Boston*, 137 Mass., 319; Jones on Easements, sec. 382; *C. & N. W. Ry. Co.* v. *City of Chicago*, 157 Ill., 148; *Patterson* v. *Boom Co.*, 98 U. S., 403; *C. B. & Q. R. R. Co.* v. *Chicago*, 149 Ill., 457. The case of *Tel. Co.* v. *Ala., etc., Railway Co.*, 68 Miss., 314, follows the cases of *Boom Co.* v. *Patterson*, 98 U. S., 403, and *Railroad Co.* v. *Ryan*, 64 Miss., 399, which related to the measure of damages of an individual owner in fee and were therefore without application. It is against the current of authority and should be overruled. See *St. Louis, etc., R. R. Co.* v. *Postal Tel. Co.*, 173 Ill., 508; *Mobile, etc., Railroad Co.* v. *Postal Tel. Co.*, 46 S. W. Rep., 571; *New Orleans, etc., Railroad Co.* v. *Southern Railroad Co.*, 53 Ala., 211; Cook on Corp., sec. 934.

WHITFIELD, J., delivered the opinion of the court.

The only question of importance in this case is what is the true measure of damages in cases of this character? In *St. Louis, etc., Ry. Co.* v. *Postal Telegraph-Cable Co.*, 173 Ill., 508, a case almost identical with this, that court, in the course of an ably reasoned opinion, said: "The measure of damages, therefore, suffered by the railroad company is not the value of the land embraced within the right of way between the poles and under the wires, but the measure of damages is the extent to which the value of the use of such spaces by the railroad company is diminished by the use of the same by the telegraph

company for its purposes." Citing *Chicago, B. & Q. R. R. Co.* v. *Chicago*, 149 Ill., s.c. 166 U. S., 226.

Again, the court says: "The spaces over which the wires are strung from pole to pole are not taken by the telegraph company. Such damage as the construction and operation of the telegraph line causes to the spaces between the poles the appellants are entitled to recover. The telegraph company does not acquire, by the judgment of condemnation, the fee to any portion of the right of way. Any construction which holds that it does acquire the fee is not sanctioned by the language of the act in relation to telegraph companies. The act does not confer the right to use the land condemned for any other purpose than for telegraph purposes. The company cannot take possession of it or use it for any other purpose than to erect telegraph poles, and to suspend wires upon them, and to maintain and repair the same. The company will have the right to enter upon that portion of the right of way which is between the telegraph poles and under its wires for the purpose of repairing its lines. But the telegraph company acquires no right to exclude the railroad company from the use of the land. The ownership of the railroad company remains as it was before, while the telegraph company merely acquires an easement upon what it condemns for the purpose of entering thereon in order to erect and repair the line." *St. Louis, etc.,* v. *Postal Telegraph-Cable Co.*, 173 Ill., 508 (1898). In this case, that court sustained a judgment for nominal damages, and held that the principle announced in the C., B. & Q. case applied to and should govern that case.

In the case of *Mobile & Ohio Ry. Co.* v. *Postal Telegraph-Cable Co.*, 46 S. W. Rep., 571, the supreme court (Tennessee) sustained a judgment for nominal damages only, and that court said: "This is simply a case where the railroad is not using the space occupied by the posts and wires, and where it cannot convey it to another for any purpose, in which only nominal damages arise." In that case nominal damages only were

awarded to the railroad company in a condemnation proceeding by the telegraph company for the right to construct, maintain and operate its telegraph lines along and upon the right of way of the railroad.

There were two causes at the same time before the court on appeal by the railroad company between the same parties and involving the same question.   Under the statutes of Tennessee a separate condemnation proceeding was required by the telegraph company in each circuit court district through which the road ran, hence there were two causes appealed from two separate circuit court districts, which were heard by the supreme court together.   The court said: '' The causes are before us on appeal by the railroad company, but the real party in interest is the Western Union Telegraph Company, a competing line, with which the railroad has a contract for an exclusive line over its right of way, and which has a right, under its contract, to use the name of the railroad company in any suit to resist the attempt of any competing line to construct any other lines upon its right of way.''   .   .   .   Again this court says: '' It does not acquire any estate in fee.   It only acquires an easement or right of way, and this only for railroad purposes. While its right of way extends to a certain distance on each side of its track, it has no right to occupy the way beyond its track, cuts and fills, or to such distance and to such an extent only to maintain its track and operate its trains.   It can only go beyond these limits for necessary railroad purposes.   It cannot sell, transfer, encumber or use its right of way except as its necessities and conveniences may demand for the proper operation of its road.   It cannot license the appropriation of any part of such right of way to private business purposes nor to public purposes, except so far as needful and helpful to the operation of the road itself.   Jones on Easements, sec. 383.''

'' Its right of way can, therefore, have no market value, because it cannot be placed upon the market, either by private sale or public outcry.   A railroad company is entitled to have

a right of way by process of condemnation, because it is a work of internal improvement, a *quasi* public use.

" But it has been held that the land already taken by the exercise of eminent domain for public use, and actually used for that purpose, may be taken by legislative authority for other public uses not inconsistent with or destructive to the former use.    Mills on Em. Dom., sec. 45, and cases there cited

" It is not insisted in this case that the use of the right of way and construction of the telegraph lines will be any detriment or obstruction to the railroad, but, on the contrary, it is shown it would be a benefit and convenience.    A telegraph line along a railroad is not only a convenience, but a necessity, and is very properly treated as a railroad appurtenance.

"A railroad company may, therefore, construct a telegraph line along its right of way or permit another to do so, but it acquires and can confer no exclusive right to do so.    *Western Union Tel. Co.* v. *Baltimore & Ohio R. R. Co.*, 19 Fed. Rep., 660; *Western Union Tel. Co.* v. *B. & O. S. W. R. R. Co.*, 11 Fed. Rep., 1; *Western Union Tel. Co.* v. *American Union Tel. Co.*, 38 Am. Rep., 781; *Pensacola Tel. Co.* v. *Western Union Tel. Co.*, 3 Otto, 124; 3 Am. & Eng. Enc. L. (1st ed.), 885, 886.

" Under this view of the estate and interest which railroad companies have in their right of way, it is difficult to see how the damages sustained by the road can be anything but nominal.

" It is said with much earnestness, and with some degree of plausibility, that it would be unjust to allow a telegraph company to plant its poles along the right of way when the railroad company had expended thousands of dollars to clear and keep it free of obstructions and yet pay nothing for the privilege.    But this view is more specious than sound, for the railroad must incur this expense for its own purposes, whether the telegraph line is there or not, and must keep its right of way clear of obstructions, whether it is occupied by a telegraph

line or not, and there is no greater burden or expense because of the presence of the telegraph line.

"The trial judge in the Madison county case held: "The measure of damages to the defendant is the amount of decrease in value of the use of the right of way for railroad purposes when it is jointly used for telegraph purposes. This rule was no doubt adopted from the rule laid down by the supreme court of the United States in the case of *C. B. & Q. R. R. Co.* v. *The City of Chicago*, 166 U. S., 248.''

And the supreme court of Alabama, in the case of *M. & O. Ry. Co.* v. *Postal Tel.-Cable Co.*, 24 So. Rep., 408, appeal from the circuit court of Mobile county, Justice Haralson for the court, said: "This cause is an appeal from the circuit court to review the proceedings of that court in the trial of the cause on appeal from the probate court, where they were instituted, for the condemnation of an easement in favor of the appellee company, to construct and operate its line of telegraph over the right of way of appellant company. The case is here on appeal by the railroad company, but the real party in interest, as appears from the proceedings, is the Western Union Telegraph Company, with which the railroads have a contract for an exclusive line over its right of way, and under its contract said telegraph company may use the name of the railroad company to resist the attempt of any other line to construct on the right of way of the railroad any competing telegraph line.''

"In the case before us a very nominal amount of land constituting right of way is proposed to be taken—only that part of it occupied by posts, one hundred and seventy-five feet apart, leaving the way for all purposes unobstructed. It is really an easement in an easement, a servitude, true, for which the company is entitled to some compensation under the constitution. The railroad company, however, holds its right of way so far as is made to appear simply for railroad purposes, and is restricted in its use of same for such purposes. Under this view of the estate that the railroad company has in its right of way,

it is difficult to see how the damages sustained by the road can be anything more than nominal. Indeed, if we might weigh advantages and disadvantages, a competing line would naturally and reasonably appear to be an advantage to the railroad company. . . .

" It has not been shown that the company holds the land as a private individual, to devote it to any purposes it pleases, or to sell it at will at the highest price it will bring on the market. The land constituting the right of way really has no market value so long as it is used for such purposes. It has been withdrawn by the very uses of the company from marketable land; and when there can be no market value of land by reason of its use as a part of an extensive business or enterprise, its value must be determined by the use to which it is applied, and necessarily not by any supposed market value it has. *Illinois Cent. R. R. Co.* v. *City of Chicago*, 141 Ill., 509; *Chicago, B. & Q. R. R. Co.* v. *City of Chicago*, 149 Ill., 457; *Chicago, B. & Q. R. R. Co.* v. *City of Chicago*, 166 U. S., 226; Lewis on Em. Dom., sec. 485. Commenting on the decision of the Illinois case last cited, which was a case for the condemnation of a street across railroad tracks or right of way, the supreme court of the United States, in the case last cited, used language well adapted to the case in hand. They say: " The land as such was not taken, the railroad company was not prevented from using it, and its use for all the purposes for which it was held by the railroad company was not interfered with, only so far as its exclusive enjoyment for the purpose of railroad tracks was diminished in value by subjecting the land within the crossing to public use as a street.

" The supreme court of Illinois well said ' that the measure of compensation is the amount of decrease in the value of the use for railroad purposes caused by the use for purposes of a street, such use of a street being exercised jointly with the use of the company for railroad purposes. In other words, the company is to be compensated for the diminution in its right to

use its tracks caused by the existence and use of the street.' "
The supreme court of Illinois held in that case that the trial
court did not err in excluding evidence to show the general
saleable value of the land constituting the right of way included
in the crossing, or its general value for other uses than that to
which it was applied.    The soundness of this principle was
approved by the federal court, and it appears to be sustained
by reason and authority.    *Chicago, etc., R. R. Co.* v. *City of
Chicago*, 149 Ill., 457, s.c. 166 U. S., 249; *Mobile & O. R. R.
Co.* v. *Postal Tel. Co.*, supreme court of Tenn., April term 1898,
in MS.—two cases tried and decided together, 46 S. W., 571.

We approve the principles announced in these cases, except
that we do not say that the damages are merely nominal.

We adopt the rule as first above stated in *St. Louis, etc., Ry.
Co.* v. *Postal Telegraph-Cable Co.*, 173 Ill., at p. 534, to wit:
"The measure of damage, therefore, suffered by the railroad
company is not the value of the land embraced within the right
of way between the poles and under the wires, but the measure
of damages is the extent to which the value of the use of such
spaces by the railroad company is diminished by the use of the
same by the telegraph company for its purposes." This is the
true measure of damages in cases of this character.

In respect to the proposition that the railroad company might,
in future, possibly change its route—whether with or without
legislative permission—and, in the future, "use the lands for
purposes other than a right of way," that this possible use
should be taken into account as an element of damages.    Mr.
Justice Harlan, speaking for the United States supreme court,
said, in *Chicago, etc., R. R. Co.* v. *City of Chicago*, 166.
U. S., at p. 249: "Such a possibility was too remote
and contingent to have been taken into account, while, as
held in *Boom Co.* v. *Patterson*, 98 U. S., 403, 408, the gen-
eral rule is that 'compensation is to be estimated by reference
to the uses for which the property is suitable, having regard to
the existing business and wants of the community, or such as

may be reasonably expected in the immediate future,' it is well settled that mere possible or imaginary uses, or the speculative schemes of its proprietor, are to be excluded "—citing the authorities. This is undoubtedly the sound view. Again, Mr. Justice Harlan puts the point with great clearness in same case at p. 258, saying: " Compensation was awarded to the railroad company upon the basis of the value of the thing actually appropriated by the public—the use of the company's right of way for a street crossing, having regard to the purposes for which the land in question was acquired and held, and was always likely to be held. In the case of individual owners, they were deprived of the entire use and enjoyment of their property, while the railroad company was left in the use and possession of its property for the purposes for which it was being used and for which it was best adapted, subject only to the right of the public to have a street across it. In this there was no denial of the equal protection of the laws, etc."

The doctrine of *Boom Co.* v. *Patterson*, 98 U. S., 402, has no application to this case. Patterson owned his island absolutely, to be used or sold for any purpose he pleased. His use of it was not limited as is the use of its right of way by a railroad. The difference in the nature and character of the uses to which the property in the two cases may be put, makes the difference in the elements of damage, proper, respectively, in the two kinds of cases. It was proper to consider the " adaptability [p. 409] of the lands for the purpose of a farm," in Patterson's case, because that was, under the law, a use to which as owner in fee, unrestrictedly, he could put it. So far as the contention that the railroad company might in the future conclude to lay other tracks, or side tracks, and that if it did, the telegraph poles would be in the way, " is concerned, it is enough to say that the appellee agrees, in such case, to ' remove such poles to such other point or points on the said right of way adjacent thereto, which shall be designated by said railroad company, upon reasonable notice, and at the expense of the tel-

egraph company,' and we think, with the supreme court of Illinois (*St. Louis, etc., Ry. Co.* v. *Telegraph Co.*, 173 Ill., p. 535), that this is a valid, enforceable stipulation.

The exclusive contract between the railroad and the Western Union Telegraph Co., was of course void, as in restraint of trade and as creating a monopoly, as has been repeatedly held. Appellant relies—as to the measure of damages—on *Postal Telegraph-Cable Co.* v. *A. & V. Ry. Co.*, 68 Miss., p. 314. It is not entirely clear what rule is meant to be declared therein. A single sentence covers all that is said. There are no authorities cited, and there is no discussion. It is to be remarked that the law on this subject—applicable to damages caused in this way by this modern agency—is of very recent development. The doctrine announced by Mr. Justice Harlan for the United States supreme court above, and of the supreme courts of Illinois, Tennessee and Alabama, is undoubtedly the only correct view, and if the case of *Postal Telegraph-Cable Co.* v. *Ala. & V. Ry. Co.*, 68 Miss., 314, conflicts with what we have herein announced, it is to the extent of such conflict hereby overruled.

The right result was reached in the court below, and the judgment is

*Affirmed.*