[No. 4232.]

# The Union Pacific Railroad Company v. The Colorado Postal Telegraph-Cable Co.

|       |     |
|-------|-----|
| 30    | 133 |
| e30   | 209 |

### 1. Eminent Domain—Practice,—Duties of Commissioners.

In a proceeding by a telegraph company to condemn a right of way for its telegraph line over the right of way of a railroad company, commissioners appointed under section 1720 Mills' Ann. Stats. have no authority to determine the question as to whether the property sought to be condemned was to be taken for a public use, and their authority to determine the question of the necessity for taking the land is limited to a determination of the quantity of land or width of the proposed right of way sufficient to serve the reasonable physical needs of the petitioner, in erecting and maintaining its telegraph line.

### 2. Same—Waiver.

In a proceeding to condemn a right of way for a telegraph line over the right of way of a railroad company where respondent made no attempt to submit to the court questions as to whether the taking of the land was for a public use and the necessity therefor until after the report of the commissioners was filed, the right to have such questions determined by the court was waived.

### 3. Corporations—Charter—Collateral Attack.

The charter of a corporation duly organized and existing under the laws of the state can not be attacked in a collateral proceeding.

### 4. Eminent Domain—Public Use—Evidence.

In a proceeding to condemn a right of way for a telegraph line over the right of way of a railroad company, the fact that the charter of the telegraph company shows that it was organized for the purpose of selling the lines of telegraph which it might construct, and evidence offered that it was the creature of a foreign corporation and that it was the intention to operate the line in question in the interest of and in connection with that corporation, did not establish in law an intent to take the property for a private use.

### 5. Same—Necessity.

In a proceeding to condemn a right of way for a telegraph line over the right of way of a railroad company evidence offered to prove the existence of a highway along and adjacent to the route upon which petitioner proposed to erect its telegraph line, upon which the line might be constructed, was immaterial to

prove that there was no necessity for taking a right of way through the lands of respondent.

**6.   Eminent Domain—Discretion of Petitioner to Locate Route.**

In a proceeding to condemn a right of way for a telegraph line, the discretion of the petitioner to determine the route of its own line cannot be interfered with in the absence of a showing of bad faith, a malicious motive or that the taking of the particular tract sought to be condemned would entail a great loss which might readily be avoided.

**7.   Eminent Domain—Telegraph Lines—Necessity.**

In a proceeding to condemn a right of way for a telegraph line over the right of way of a railroad company, the fact that petitioner has not obtained permission from the municipal authorities to erect and maintain its line through certain incorporated towns along the proposed right of way, is immaterial to the respondent and cannot be introduced to show that there is no necessity for condemning a right of way through respondent's lands.

**8.   Eminent Domain—Telegraph Lines—Public Use—Sufficiency of Petition.**

In a proceeding to condemn a right of way for a telegraph line, a petition which alleges that petitioner is a corporation organized for the purpose of erecting and maintaining lines of magnetic telegraph in this state, is sufficient to show that the line to be established is for public use.

**9.   Eminent Domain—Telegraph Lines Over Railroad Right of Way.**

A telegraph company may condemn a right of way for its telegraph line over the right of way of a railroad company although another telegraph line is already in existence along the railroad right of way, where petitioner's line will neither interfere with the operation of the other telegraph line, nor with the respondent's railroad.

**10.   Same—Title Acquired—Easements—Damages—Instructions.**

Where a right of way is condemned for a telegraph line over the right of way of a railroad company, the title acquired by the telegraph company is only an easement, and an instruction that authorized the assessment of damages on the basis that the title taken was an easement is correct.

**11.   Appellate Practice—Rehearing—New Question.**

A proposition not advanced at the original hearing of a cause will not be considered on rehearing.

*Error to the District Court of Arapahoe County.*

Messrs. TELLER & DORSEY, for plaintiff in error.

Messrs. BENEDICT & PHELPS (Mr. J. R. McIN-
TOSH of counsel), for defendant in error.

Mr. JUSTICE GABBERT delivered the opinion of the
court.

Defendant in error, as petitioner, instituted an
action in the court below against plaintiff in error,
as respondent, to condemn a right of way longitu-
dinally through the lands of the latter, upon which to
erect and maintain a telegraph line. Such proceed-
ings were had that commissioners were appointed
without objection from either party, who heard the
testimony and reported to the court. This report was
adopted, and a judgment and decree rendered accord-
ingly. To review the proceedings, respondent brings
the case here on error.

Some of the errors assigned are predicated upon
the matters incorporated in what is termed a bill of
exceptions, which petitioner contends cannot be con-
sidered. To test this question, its counsel move to
strike the bill of exceptions from the files. We shall
not determine this motion, for, assuming that the mat-
ters in the bill upon which error is based by counsel
for respondent are thereby properly presented, we
are satisfied that the errors assigned upon what is
thus disclosed are insufficient to work a reversal.

For answer respondent alleged that petitioner is
a corporation organized to take property for the use
of a foreign corporation, so as to enable the latter to
evade the laws of this state, and that there extended
along and adjacent to the lands of respondent through
which petitioner was seeking to condemn a right of
way, a public road, upon which petitioner is author-
ized, under the laws of the state, to construct its pro-

posed telegraph line. After the appointment and
qualification of the commissioners, and before pro-
ceeding to hear the testimony, counsel for respondent
requested certain instructions, which were refused.
At the request of counsel for petitioner, others were
given. Those requested by respondent and refused
were to the effect that a corporation cannot take land
by the exercise of the right of eminent domain except
for a public use, and then, only when a necessity
exists for the land so sought to be taken, and that the
necessity meant by the statute is not established by
proof that such land is convenient for the purposes for
which it is intended to be used, or will lessen the cost
of constructing the structures which the petitioner
proposes to erect thereon. *Inter alia* the court in-
structed the commissioners in substance that in the
absence of bad faith or improper motives on the part
of petitioner, it had the right to determine the route
and location of its line of telegraph, and if its proper
officers, in good faith, had determined to build such
line, and had selected the right of way in question
upon which to construct it, then the necessity men-
tioned in the statute is established. At the hearing
before the commissioners, petitioner introduced its
articles of incorporation from which it appears that
the objects for which it is incorporated are the con-
struction, acquisition by purchase or otherwise, main-
tenance and operation of telegraph lines in the state
of Colorado, and the sale or other disposition of such
lines. Respondent offered to prove that these articles
of incorporation were drawn and executed at the
request of The Postal Telegraph-Cable Company, of
New York; that no stock had ever been subscribed
and paid for, except sufficient to authorize the qual-
ification of directors; that it was not expected the
latter would raise any money by subscription to
stock, or otherwise; that all money would be fur-
nished by the New York company; and that both di-

rectors and officers of petitioner would be under the
direction and control of that company. Respondent
also offered to prove the existence of a highway
along, adjacent and near to respondent's right of
way for the whole distance upon which a telegraph
line could easily and cheaply be constructed. It also
offered to prove that the petitioner had not obtained
leave from the corporate authorities of certain towns
through which the proposed line of telegraph must
be constructed in utilizing the right of way sought to
be condemned, to construct its line through such
towns. These offers were refused. On the filing of
the report, the respondent moved to dismiss the pro-
ceedings, because no proofs had been offered by the
petitioner tending to prove the necessity for taking
the right of way in question, which motion was de-
nied.

Counsel for respondent contend that these sev-
eral matters present prejudicial error, for the reason
that petitioner had failed to prove that the property
sought to be condemned was to be taken for a public
use, or that there was any necessity for taking it. It
is also urged that in view of the issues made by the
pleadings, the respondent had the right to introduce
at the hearing before the commissioners the testimony
refused, for the reason that such testimony tended to
establish a state of facts from which it would appear
the taking of the land in question was for a private
and not a public use, and that there was no necessity
for such taking. These matters might well be dis-
posed of upon the ground that the law does not con-
template that commissioners in condemnation pro-
ceedings shall consider or determine such questions.
On the contrary, they are to be determined by the
court or judge; but unless so presented for determina-
tion before the appointment of commissioners, or the
right to do so is in some way reserved, they are

waived. 1 Mills' Ann. Stats., sec. 1720, provides that the court or judge may appoint a board of commissioners to ascertain the necessity for taking lands sought to be condemned. What proposition may be raised upon the question of necessity will vary according to the circumstances of each particular case. In this instance, however, so far as disclosed by the pleadings, or any matter discussed in the briefs, we are of the opinion that the authority of the commissioners on that question would be limited to a determination of the one of quantity of land, or, more accurately speaking, the width of the proposed right of way sufficient to serve the reasonable physical needs of petitioner, in erecting and maintaining its telegraph line. Ordinarily, the authority of commissioners on the subject is so limited. In effect, this court has so decided in the recent case of *Gibson v. Cann,* 28 Colo., 499; 66 Pac., 879. It was certainly never intended that commissioners should be required to determine questions the solution of which depends upon the application of intricate questions of law such as would be presented by the trial of issues tendered by the answer of respondent. This court has frequently decided, in cases where the question of damages in condemnation proceedings was submitted to a jury, that the only matter proper for the jury to consider was the one of damages, and that all other questions must be settled *in limine. Sand Creek L. I. Co. v. Davis,* 17 Colo., 326; *Thompson v. Reservoir Co.,* 25 Colo., 243; *Seidler v. Seeley,* 8 Colo. App., 499; *Colo. F. & I. Co. v. Four Mile R. Co.,* 29 Colo., 90; 66 Pac., 902.

On principle, the same rule is applicable to the case at bar. The commissioners were appointed without objection on the part of respondent; there was no attempt upon its part to submit to the court the determination of any of the questions of fact upon

which it relied to defeat the proceeding, until after
the report was filed. Respondent did not seek to prove
that petitioner did not require the quantity of land
sought to be condemned, nor by its pleadings was
any such defense suggested.   None of the matters
above mentioned, which respondent sought to submit
to the commissioners were of a character which it was
the province of that body to determine; and by the
course pursued the right to have them determined by
the court was waived.   The reason for this conclusion
is obvious.   If, for any reason, the petitioner in con-
demnation proceedings is not entitled to exercise the
right of eminent domain, or take a particular tract,
these questions should be determined by the court
*in limine.*   If adverse to the petitioner, that is the
end of the proceeding.—*Sand Creek L. I. Co. v.
Davis, supra.*   In this connection we will call atten-
tion to the case last cited.   In that case the petitioner
sought to have a right of way condemned through
an already existing ditch.   It was held that if the
respondent desired to have the question of the feasi-
bility and practicability of taking a right of way
through such ditch determined, that the question
should have been referred to a board of commission-
ers appointed by the court, as the law directs.   This
holding, however, was based upon the provisions of
sections 2261 and 2262, 1 Mills' Ann. Stats., which pro-
vide that lands improved or occupied shall not, with-
out the written consent of the owner, be subjected to
the burden of more than one irrigating ditch con-
structed for the purpose of conveying water through
such property to lands adjoining or beyond, when the
object can be feasibly and practicably attained by
uniting and conveying all the water necessary through
such property in one ditch; and that where it is nec-
essary to convey water for the purposes of irrigation
through the improved or occupied lands of another,

the shortest and most direct route practicable upon which such ditch can be constructed shall be selected. These provisions, however, have no application to the case at bar. Neither were they invoked in *Gibson v. Cann, supra.* Both parties, however, appear to have treated the question of necessity as raised by the pleadings and testimony offered as being proper to submit to the commissioners, and for that reason we shall treat it as properly presented for review.

The several assignments of error argued by counsel for respondent, including those based upon the instructions refused and given with respect to what constitutes a taking for a public use, the necessity for such taking, and the right of petitioner to determine the route and location of its line except those specially noticed later, may be considered under this proposition: Did the evidence offered on behalf of the respondent and refused, as above noticed, tend to prove that petitioner was not seeking to condemn a right of way for a public use, or tend to establish facts which would defeat the proceeding? Counsel for respondent contends that it does, for the reasons (1) that this testimony would have established that the right of way was to be subjected to a private use; and (2) there was no necessity for taking a right of way through the lands of respondent. In support of the first proposition, it is urged that the articles of incorporation of petitioner disclose that it was organized to sell or otherwise dispose of the lines of telegraph which it might construct or acquire in this state, and that this fact, in connection with the testimony offered to the effect that it was the creature of a foreign corporation, and not its honest intention to operate the line in question except in the interest of, and in connection with, that corporation, established in law an intent to take the property of respondent for a private use. There is nothing in the spirit or pol-

icy of the law which prohibits the same persons from organizing two or more corporations with the intention that they shall be operated in conjunction with each other.   Neither does the law prohibit a corporation from accepting financial assistance from another.   It should be the policy of this state to encourage the construction and operation of competing lines of communication between points within its own borders and those located within other states.   In many instances, this can only be effected by corporations organized under our laws acting in conjunction with those created under the laws of a sister state.  One of the essential attributes of property is the right to sell, and unless this right is limited by law, it necessarily exists.   Further, it appears from the articles of incorporation of petitioner, that it is duly organized and existing under the laws of this state, and its charter can not be attacked in a collateral proceeding. *Kansas & T. C. Ry. Co. v. N. W. C. & M. Co.*, 161 Mo., 288; *In re N. Y. L. & W. Ry. Co.*, 35 Hun., 220; affirmed 99 N. Y., 12; *Frost v. Frostburg Coal Co.*, 24 Howard (U. S.) 278; *Postal T. Co. v. Ore. S. L. R. Co.*, 65 Pac., 735; *Postal T. Co. v. Ore. S. L. R. Co.*, 104 Fed., 623; *Ore. S. L. R. Co. v. Postal T. Co.*, 111 Fed., 842.

In the last three cases cited, the identical question presented by the answer of respondent and the testimony offered relative to the good faith and power of petitioner, was raised, in the same manner as in the case at bar, and in each instance it was held that the matters thus presented were wholly immaterial.

It is urged that if respondent had been permitted to prove the existence of a highway adjacent to the route upon which petitioner proposes to erect its telegraph line, and also prove that leave to erect such line through certain incorporated towns through which the proposed right of way extends had not

been secured from the municipal authorities· of such towns, that then non-necessity for taking the lands of respondent would have been established.   In support of this proposition we are referred to sec. 587, 1 Mills' ·Ann. Stats., which provides that telegraph companies organized under the laws of this state may construct their line along and upon the public roads; and sec. 588 *ibid,* which inhibits such companies from constructing their lines upon the streets or alleys of an incorporated town without the consent of the corporate authorities.   The legislature has vested corporations of the character of petitioner with discretion in locating their telegraph lines.   Ordinarily, the courts can not exercise supervision with respect to such matters.   The discretion which the corporation may exercise in determining the route of its lines can not be interfered with in the absence of a showing of bad faith, a malicious motive, or that the taking of a particular tract sought to be condemned would entail a great loss which might readily be avoided.   *In re N. Y. & H. R. Co.,* 46 N. Y., .546; *Cal. C. R. Co. v. Hooper,* 76 Cal., 404; *Chicago E. I. R. Co. v. Wiltse,* 116 Ill., 449; *Chicago W. I. R. Co. v. Dunbar,* 100 Ill., 110.

There was no showing of this character on the part of the respondent.   True, it did introduce evidence to the effect that the erection of a telegraph line along its right of way would cause some inconvenience, and might possibly increase the hazard of railroading, but in no greater degree in this particular instance than other railroads must suffer from the erection of telegraph lines adjacent to their railroad tracks—a condition which exists almost without exception along every line of railroad in the United States.

On behalf of respondent it is contended that in the absence of leave from the municipal authorities

of the towns situate along the proposed right of way
to erect and maintain its line through such towns,
and through which the lands sought to be condemned
extend, petitioner could not take such lands because
the proceedings must be regarded as an entirety.
This question does not concern respondent.   If peti-
tioner can not erect its line of telegraph through the
towns in question, except it obtain leave to do so from
the corporate authorities, and fails to obtain such
leave, respondent is not injured.   Petitioner can not
use the right of way situate within the corporate
limits of towns except for the purposes for which it
is taken.   If it never utilizes the right of way within
such limits, respondent can not complain.   Petitioner
might be able to build its line around such towns, but
that certainly can make no difference to respondent.
*Cal. S. R. Co. v. Kimball*, 61 Cal., 90; *Chicago W. I.
R. Co. v. Dunbar, supra.*

The motion to dismiss heretofore noticed was
also based upon the ground that the petition was in-
sufficient.   In support of this claim it is urged:   (1)
It does not appear from the statements of the petition
that the telegraph line of petitioner is to be public;
and (2) Property held by one corporation for a pub-
lic use can not be taken by another for the same pur-
pose and use.   The object for which land is taken
determines whether or not the use to which it is to be
subjected, when condemned, is public.   *Denver R. L.
& C. Co. v. U. P. Co.*, 34 Fed., 386.

In the petition it is alleged that petitioner is a
corporation organized for the purpose of erecting and
maintaining lines of magnetic telegraph in this state.
The law of the state provides that companies may be
organized for the purpose of maintaining telegraph
lines.—1 Mills' Ann. Stats., sec. 587.   The business
which such companies are authorized to transact is
public in its nature.   They must receive and trans-

mit messages from other companies engaged in the same business, and transmit messages tendered by any person.—1 Mills' Ann. Stats., secs. 589-590.

Counsel for respondent recognize that property held for a public use is subject to the eminent domain power of the state, but contend that such property can not be taken by another to be used for the same purpose, for which it is already held. The case made does not fall within the exception claimed. Proceedings in condemnation may be maintained by a telegraph company against a railroad corporation —Laws 1885, p. 358. It appears there is already a line of telegraph along the respondent's right of way. The evidence discloses, however, that the proposed line of petitioner will neither interfere with this line, nor with the operation of respondent's railroad. There is ample room for all. No property of respondent will be taken which is already devoted to, or needed for, a public use, and it is, therefore, not in a position to insist that property held by it for a public use will be taken by another for the same or a different use. The mere fact, therefore, that petitioner seeks to condemn a right of way through lands belonging to a railroad company does not render the petition insufficient. The respondent can not successfully resist the condemnation of such right of way unless it appears that its use was necessary to the maintenance and operation of its railroad and the lines of telegraph already erected thereon, or is needed for such purpose. That property held for a public use may be taken under the exercise of the right of eminent domain for the same or a different public use, when such taking does not materially interfere with the uses for which it is already held, has been recognized in a great number of cases in which this subject has been considered. *M. & O. R. Co. v. Postal T. C. Co.*, 120 Ala., 21; *Southern P. R. Co. v.*

Southern Cal. R. Co., 43 Pac., 602; S. W. T. & T. Co. v. Gulf C. & S. F. Ry. Co., 52 S. W., 106; Postal Tel. Co. v. Ore. S. L. R. Co., 65 Pac., 735; Salt Lake City v. Salt L. City W. & E. P. Co., 67 Pac., 672; Colo. E. Ry. Co. v. U. P. Ry. Co., 41 Fed., 293.

The final question to be considered relates to an instruction on the question of damages. This instruction is to the effect that the declarations in the petition covering the manner of the construction of the telegraph line were binding upon the petitioner, and if right of way was granted, the construction of the line must be in accordance with such declaration. It is said this instruction is erroneous, because, according to the statements in the petition, it was only sought to condemn an easement. Counsel for respondent contend that, under the eminent domain act, nothing less than a fee can be taken, and that the damages should have been assessed upon the basis that the title taken by petitioner was of that character. Neither of these reasons is tenable. The statute which authorizes telegraph companies to condemn part of the right of way belonging to a railroad company—Laws 1885, supra—must be construed in connection with the chapter on the subject of eminent domain. While it is true the latter seems to recognize that the title taken in condemnation proceedings is a fee, the act above referred to was passed subsequent to the section containing this provision, and therefore, must control the title which telegraph companies may take by eminent domain proceedings in the right of way of a railroad company. The language of the act clearly imports that an easement is the character of title which a telegraph company may condemn in such way for it expressly provides that the line shall be so constructed and maintained as not to obstruct or hinder the usual operation of the railroad along the right of way on which the line is

constructed. The spaces over which the wires are strung from pole to pole are not taken by petitioner. The language of the petition relative to the use to which the right of way is to be subjected, and the manner in which the telegraph line is to be constructed and maintained, as well as the act of 1885, *supra,* recognize that an easement only is claimed and can be taken; and that the respondent still has the right to use its right of way for railroad purposes except so far as the poles erected may interfere with that use, subject, however, to the right of petitioner to enter for the purpose of erecting and repairing its line. Under statutes similar to our own —Laws 1885, *supra*—it has been decided in other states that the title acquired by a telegraph company by condemnation proceedings in the right of way of a railroad company is merely an easement. *St. L. & C. R. R. Co. v. Postal Tel. Co.,* 173 Ill., 508; *M. & O. Ry. Co. v. Postal Tel. Co.,* 76 Miss., 731.

The judgment of the district court is affirmed.

*Affirmed.*

### On Petition for Rehearing.

*Per Curiam.*—Complaint is made that no decision was rendered on the alleged errors of the commissioners in receiving testimony on behalf of petitioner as to the value of the lands taken for agricultural purposes, and rejecting that offered on behalf of respondent as to their value for railroad purposes. In the brief of counsel for respondent, reference is made to these matters, but no argument whatever was offered for the purpose of showing wherein the reception and rejection of such testimony was erroneous, and for that reason they were not referred to in the opinion. The only argument on the subject of damages was limited to a discussion of the instruction which it was said advised the

commissioners that the title to the right of way sought to be condemned was only an easement.

In the answer filed by respondent, it was stated that the land sought to be taken was a part and parcel of a right of way granted by the government to the predecessors of respondent, on condition that a continuous railroad and telegraph line should be constructed and maintained along and on such land. Wherein the source of title, or the purpose for which the right of way was granted by the general government, were material, was not argued by counsel, and therefore no opinion was expressed on the question or questions thus sought to be raised by the answer. We are now asked to grant a rehearing so that such questions may be discussed and determined. This must be refused, because a proposition not advanced at the original hearing of a cause will not be considered on rehearing—*Morgan v. King,* 27 Colo., 539. If new questions could be urged after decision rendered, there would be no end to a case brought here on appeal or error.

*Petition for rehearing denied.*